**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SHAROB ABDUL-AZIZ, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 17-2806 (FLW) (TJB) |
| | : | |
| v. | : | |
| | : | |
| GARY M. LANIGAN et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**FREDA L. WOLFSON, U.S.D.J.**

**I.       INTRODUCTION**

Plaintiff, Sharob Abdul-Aziz ("Abdul-Aziz"), is a state prisoner, presently incarcerated at East Jersey State Prison, in Rahway, New Jersey.  He is proceeding *pro se* with a civil rights complaint filed under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the New Jersey Civil Rights Act ("NJCRA").  (ECF No. 1.)  Presently before the Court is a motion by defendants, Gary M. Lanigan, Andrew P. Sidamon-Eristoff, and Jignasa Desai-McCleary (collectively, "Defendants"), for dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6).  (ECF No. 4.)  For the following reasons, the motion is GRANTED in part and DENIED in part.

**II.       BACKGROUND**

This action originated as *Abdul-Aziz v. Lanigan*, Civ. A. No. 14-2026 (FLW) (TJB), ("the Prior Action") in which Abdul-Aziz, as well as three other plaintiffs, William McCray, Ibn Pasha, and Charles Rashid, asserted § 1983 and RLUIPA claims against Lanigan, as the commissioner of the New Jersey Department of Corrections ("NJDOC"), Sidamon-Eristoff and

Desai-McCleary, as officials with the New Jersey Department of the Treasury ("Treasury"), and

Stephen D'Ilio, the administrator of New Jersey State Prison, who is no longer a party to this

case. The plaintiffs in the Prior Action alleged interference with their religious exercise as

practicing Muslims based on four distinct grounds: (1) denial of daily Halal meats and meals;

(2) denial of donated Halal feast meals; (3) prohibition and confiscation of personal prayer oils;

and (4) failure to facilitate congregational prayer. (*See* Civ. A. No. 14-2026, Compl., ECF No.

1.) They alleged that, while Jewish inmates received kosher meals, Muslim inmates did not

receive Halal meals and were forced to adopt a vegetarian diet. (*Id.* ¶¶ 14–16.) While they had

previously been given donated Halal meals for two annual Islamic feasts, they alleged that this

practice was ceased at the direction of Treasury officials. (*Id.* ¶¶ 17–20.) The plaintiffs in the

Prior Action also alleged that prison officials had begun confiscating, and then had prohibited,

personal prayer oils, a component of daily prayers, despite other oils being sold in the prison

commissary. (*Id.* ¶¶ 21–26.) Finally, the plaintiffs alleged that their right to participate in daily

congregational prayer had in some way been impaired.[1] (*Id.* ¶¶ 27–32.)

In March 2016, this Court granted in part and denied in part a motion to dismiss the Prior

Action. (Civ. A. No. 14-2026, ECF No. 27.) Specifically, the Court found that Abdul-Aziz's §

1983 and NJCRA claims regarding denial of Halal feast meals were time barred. (*Id.* at 13–14.)

While finding that Abdul-Aziz's feast-meal claims under RLUIPA were similarly time barred as

---

[1]  Abdul-Aziz had also instituted a parallel action several years earlier, before District Judge
Mary L. Cooper, *Abdul-Aziz v. Ricci*, Civ. A. No. 08-5764 (MLC) (DEA), which similarly
asserted, among other claims, violations of § 1983 and RLUIPA concerning denial of Halal feast
meals and confiscation of prayer oils. In that action, he specifically challenged a policy change
by New Jersey State Prison administration prohibiting possession of prayer oil and subsequent
confiscation of such oil. (Civ. A. No. 08-5764, Am. Compl., ECF No. 5, ¶¶ 5, 36.) The
procedural course of that case is complex, but it suffices, for the purposes of this opinion, to note
that, after a remand from the Supreme Court, that action was settled and dismissed with
prejudice. (Civ. A. No. 08-5764, Stip. & Order, ECF No. 121.)

against the NJDOC defendants, it found that they could be timely as asserted against the

Treasury defendants. (*Id.*) The Court also found that all claims concerning confiscation of

prayer oils were untimely. (*Id.*) It found the continuing-violation doctrine insufficient to

preserve these claims. (*Id.* at 14–16.) Accordingly, these claims were dismissed without

prejudice.[2] (*Id.* at 15–16.)

As the defendants in the Prior Action were impleaded only in their official capacities, this

Court dismissed with prejudice all claims for damages against them as barred by immunity under

the Eleventh Amendment. (*Id.* at 18–20.) The Court noted that the plaintiffs could seek to

amend their complaint to seek damages from the defendants in their individual capacities, but

also indicated that RLUIPA claims may not be asserted against government employees in their

individual capacities. (*Id.* at 20.)

Following the Court's decision on the dismissal motion in the Prior Action, Abdul-Aziz,

who had by then transferred to East Jersey State Prison, filed one Amended Complaint, (Civ. A.

No. 14-2026, ECF No. 31), while the other plaintiffs moved to file a separate Amended

Complaint, (Civ. A. No. 14-2026, ECF No. 43). Finding that the plaintiffs could not proceed

with two independent complaints, the Court directed the plaintiffs to notify it whether they

wished to remain as plaintiffs in the same action. (ECF No. 45.) After receiving the plaintiffs'

responses, the Court found good cause to sever the matter into two actions, creating the instant

proceeding, as well as *Rashid v. Lanigan*, Civ. A. No. 17-2805 (FLW) (TJB).

Accordingly, Abdul-Aziz's amended complaint from the Prior Action became the active,

original complaint in this proceeding on April 25, 2017. (ECF No. 1.) The Complaint alleges

claims against Lanigan, Sidamon-Eristoff, and Desai-McCleary under § 1983, the NJCRA, and

---

[2] The Court declined to dismiss claims asserted by the other plaintiffs in the Prior Action on timeliness grounds. (*See* Civ. A. No. 14-2026, ECF No. 27 at 12–13.)

RLUIPA on three grounds.  (*Id.*)  First, Abdul-Aziz alleges that he, and similarly situated

prisoners, "are denied any type of Halal Meals that include meat as part of 'NJDOC's'

THERAPEUTIC CENTRAL MENU."  (*Id.* ¶ 12.)  He alleges that this practice violates his First

Amendment rights by imposing a substantial burden on his practice of Islam, and he notes that

Jewish inmates receive daily Kosher meals.  (*Id.* ¶¶ 13–14.)  Second, Abdul-Aziz appears to

attempt to reassert his feast-meal claims, but alleges only that "Treasury was identified as the

source of the denial of the Id Festival Meals/Meats pursuant to N.J.S.A. 52:20-13" and that the

"denial entitles plaintiff to relief due to fact [sic] that as Muslims, Id festivals prescribe the eating

of sacrificed Halal meat traditionally lamb."  (*Id.* ¶¶ 15–16.)  Finally, Abdul-Aziz also contends

that an NJDOC policy barring possession of prayer oils burdened his practice of Islam.  (*Id.* ¶¶

17–21.)

On June 12, 2017, the Defendants filed, on the docket of the Prior Action, a stipulation of

dismissal, executed by Abdul-Aziz and on Defendants' behalf, which stated that "all of

Plaintiff's claims against the Defendants pertaining to possession, retention, and/or use of

Islamic prayer oils by State inmates, regardless of which theory or theories of recovery upon

which those claims were or could have been based, are hereby DISMISSED WITH

PREJUDICE."  (Civ. A. No. 14-2026, Stip., ECF No. 51.)  The Court so-ordered that stipulation

the following day.  (Civ. A. No. 14-2026, Stip. & Order, ECF No. 52.)  Accordingly, the prayer-

oil claim in Abdul-Aziz's Complaint is no longer active.[3]

Defendants now move to dismiss the Complaint for lack of subject-matter jurisdiction,

under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, under Rule

---

[3]  Defendants include, in their motion to dismiss, various arguments pertaining to the prayer-oil
claim.  As this claim has been dismissed with prejudice, the Court finds it unnecessary to address
these arguments.

12(b)(6). (ECF No. 4.) Abdul-Aziz filed a brief in opposition to the motion, (ECF No. 5), and

Defendants filed a reply brief, (ECF No. 6).[4]

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits the Court to dismiss a proceeding for

lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). This includes cases where

Eleventh Amendment immunity bars the plaintiff's claims, as the Court of Appeals for the Third

Circuit has noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal

courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2

(3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).

#### B. Rule 12(b)(6)

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts

accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v.*

*Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128,

134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

---

[4] For the sake of clarity, explanations of the parties' arguments are included in the Court's
analyses of each issue, *infra*, rather than in this section.

*also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the

allegations of the complaint, a court may consider matters of public record, documents

specifically referenced in or attached to the complaint, and documents integral to the allegations

raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir.

2004).

    *Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S.

519, 520 (1972) (per curiam); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per

curiam). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to

support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### C. 42 U.S.C. § 1983 and the Free Exercise Clause of the First Amendment

    As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for

certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution or laws of the United States and that the alleged deprivation was

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner

plaintiff must first show that a prison practice or policy has substantially burdened the practice of

the prisoner's religion. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115

(3d Cir. 2017). Once a substantial burden on religious exercise is shown, the policy or practice is

invalidated if it is not reasonably related to legitimate penological interests. *See Turner v. Safley*,

482 U.S. 78, 89 (1987); *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012).

## D. The NJCRA

The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those substantive rights,
> privileges or immunities has been interfered with or attempted to
> be interfered with, by threats, intimidation or coercion by a person
> acting under color of law, may bring a civil action for damages and
> for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). Due to the intentional statutory similarities, this provision "is

interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241

(3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a

defendant had in place a custom or policy which resulted in constitutional deprivation.").

## E. RLUIPA

RLUIPA prevents the government from placing a substantial burden on prisoner's

religious exercise, providing, in relevant part,

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution . . .

> even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden
> on that person—
>
> > (1) is in furtherance of a compelling governmental interest;
> > and
> >
> > (2) is the least restrictive means of furthering that
> > compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to state a claim under RLUIPA, a plaintiff must allege that the

defendant has placed a substantial burden on the plaintiff's sincerely held religious belief. *See*

*Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007).

RLUIPA does not require a plaintiff to allege that the religious practice at issue is a tenet

of his or her religion or otherwise required by his or her religion. *See Holt v. Hobbs*, 135 S. Ct.

853, 862 (2015). A substantial burden will be found if

> "1) a follower is forced to choose between following the precepts
> of his religion and forfeiting the benefits otherwise generally
> available to other inmates versus abandoning one of the precepts of
> his religion in order to receive a benefit; OR 2) the government
> puts substantial pressure on an adherent to substantially modify his
> behavior and to violate his beliefs."

*Washington*, 497 F.3d at 280. If a prisoner plaintiff shows that a policy or practice substantially

burdens a sincerely held religious belief, the burden shifts to the defendant to show that the

policy or practice furthers a compelling government interest and is the least restrictive means of

doing so. *See Holt*, 135 S. Ct. at 863. "RLUIPA does not allow for the recovery of money

damages; in other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief."

*Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (internal citation omitted).

## IV.    ANALYSIS

### A.  Eleventh Amendment Immunity

Defendants first argue that Eleventh Amendment immunity bars Abdul-Aziz's claims for damages as against them in their official capacities. (Br. in Supp., ECF No. 4-1, at 9–10.) Abdul-Aziz urges that Defendants in their official capacities have no sovereign immunity to claims seeking prospective injunctive relief. (Opp'n, ECF No. 5, at 1.)

As already established by this Court's Opinion in the Prior Action, both parties' positions are correct: Eleventh Amendment immunity generally bars claims against State employees sued in their official capacities, but federal claims for prospective injunctive relief may proceed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *Sossamon v. Texas*, 563 U.S. 277, 288–93 (2011). (*See also* Civ. A. No. 14-2026, ECF No. 27 at 18–20.) This exception for claims seeking prospective injunctive relief, initially recognized in *Ex parte Young*, 209 U.S. 123 (1908), is read narrowly, and does not permit claims for declaratory judgment as to past acts. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145–46 (1993) (discussing *Ex parte Young*). Furthermore, the *Ex parte Young* doctrine permits only *federal* claims seeking prospective injunctive relief, and does not apply to state claims, including those asserted under the NJCRA. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106; *Balsam v. Sec'y of State of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015), *cert. denied sub nom. Balsam v. Guadagno*, 136 S. Ct. 189 (2015).

While Abdul-Aziz's Complaint seeks no compensatory damages, it does seek declaratory (i.e., non-prospective) relief and punitive damages. (ECF No. 1 ¶ 32(c).) Accordingly, to the extent that Abdul-Aziz seeks declaratory relief and monetary damages from Defendants in their official capacities, such claims must be dismissed. *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145–46; *Durham v. Dep't of Corr.*, 173 F. App'x 154, 155–56 (3d Cir. 2006). Additionally,

all claims under NJCRA against defendants in their official capacities must be dismissed. *See*

*Balsam*, 607 F. App'x at 183.[5]

## B. Personal Involvement of the Defendants

Defendants next argue that "Plaintiff's Complaint fails to any [sic] personal involvement

by the Defendants." (ECF No. 4-1 at 14–16.) They urge that liability may not be premised

solely on a theory of respondeat superior, and that a defendant must have personal involvement

in the alleged underlying acts to be liable. (*Id.*) They allege that Abdul-Aziz's assertions about

their knowledge of and role in setting policy is conclusory and that his allegations regarding

Desai-McCleary and Sidamon-Eristoff are "presumably based on authority vested by N.J. Stat.

Ann. 52:50-13," which they claim is unrelated to prison policy. (*Id.*) In response, Abdul-Aziz

essentially argues that Lanigan had notice of the alleged constitutional violations and that

Defendants set the policies of which he complains. (ECF No. 5 at 1–2.)

In this case, it appears that Abdul-Aziz has adequately stated the requisite personal

involvement for a supervisory-liability claim concerning deprivation of Halal meals under §

1983 and the NJCRA. [6] Supervisory liability generally requires some affirmative conduct by the

supervisor, but this may include a supervisor's implementation or maintenance of a policy,

---

[5] Defendants separately argue that Abdul-Aziz's claims must be dismissed as against defendants
in their official capacities as they are, in those capacities, not considered persons for the purposes
of § 1983, the NJCRA, or RLUIPA. (ECF No. 4-1 at 11–13.) While this is conceptually a
different question—a matter of which claims are enabled by the statute rather than which are
barred by immunity under the Eleventh Amendment—these issues are often considered in
conjunction, and the outcome is typically the same. *See Will v. Mich. Dep't of State Police*, 491
U.S. 58, 65–66, 71 & n.10 (1989). While State employees sued in their official capacities may
not be "persons" for the purposes of damages claims under § 1983, they may still be sued for
prospective injunctive relief. *Will*, 491 U.S. at 71 n.10. In any case, as the claims are dismissed
as against Defendants in their official capacities, except insofar as the federal claims seek
prospective injunctive relief, further arguments on this matter need not be considered.

[6] As discussed below, however, these claims do not otherwise adequately make out a
constitutional violation.

practice, or custom that harmed the plaintiff. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Thus, a person who has final policy-making authority may be held liable under § 1983 if that person establishes a policy that is unconstitutional and that injures the plaintiff. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga*, 806 F.3d at 223. Without reaching the substantive merits of his claims, this is precisely the type of personal involvement that Abdul-Aziz alleges.[7]

In his Complaint, Abdul-Aziz asserts that Lanigan, as commissioner of the Department of Corrections, "is responsible for any matters of policy . . . including the violations cited herein" and that he "knew of violations through letters and remedy forms directly from inmates." (ECF No. 1 ¶ 9.) He further contends that Sidamon-Eristoff and Desai-McCleary were "vested with authority over policy violations cited herein," under New Jersey Statutes Annotated § 52:20-13.[8]

---

[7] The Third Circuit has stated that supervisory liability may be shown where the plaintiff is able to "(1) identify the specific supervisory practice or procedure that the supervisor has failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). This test, which the Third Circuit described as "the deliberate indifference test applied to the specific situation of a policymaker," *Barkes*, 766 F.3d at 317 (internal quotation marks omitted), clearly contemplates circumstances in which the supervisor's liability arises from an alleged failure to enact or enforce proper policy. The claims asserted by Abdul-Aziz are distinct, as he alleges that defendants *affirmatively* created a policy and that the direct and intended results of that policy was a violation of his constitutional rights.

[8] This statutory provision pertains to powers of the State House Commission to accept gifts and other acquisitions of property. N.J. Stat. Ann. § 52:20-13.

(*Id.* ¶¶ 10–11.)  Furthermore, Abdul-Aziz alleges, "[u]pon information and belief," that

Defendants "are responsible for matters of policy affecting prisons within 'NJDOC', and

therefore have actual Knowledge of and are personally responsible for the illegal policies &

conditions to which Muslim prisoners are subjected."  (*Id.* ¶ 23.)  Abdul-Aziz identifies, as the

offending policy, the denial to Muslim prisoners of "any type of Halal Meals that include meat as

part of 'NJDOC's' THERAPEUTIC CENTRAL MENU."  (*Id.* ¶¶ 12, 14, 26).

Particularly given the leeway that must be granted to *pro se* litigants, *see Haines*, 404

U.S. at 520, the Court finds that these allegations plead sufficient personal involvement for

supervisory-liability claims against Defendants.  Abdul-Aziz asserts that Defendants not only

have ultimate policymaking authority, but that they in fact enacted the policy he challenges.  He

further alleges that the intended and actual results of these policies violated his constitutional

rights.  Accordingly, he has pleaded that "a policymaker . . . established or enforced policies and

practices directly causing the constitutional violation."  *Chavarriaga*, 806 F.3d at 223.

The Court further finds, however, that Abdul-Aziz fails to plead any personal

involvement, or even any supporting facts whatsoever, in support of his claim regarding Halal

feast meals.  Indeed, the full extent of his allegations on this topic are as follows:

> 15.  On December 29, 2011, Department of Treasury was
>      identified as the source of the denial of the Id Festival
>      Meals/Meats pursuant to N.J.S.A. 52:20-13.
>
> 16.  This denial entitles plaintiff to relief due to the fact that as
>      Muslims, Id festivals prescribe the eating of sacrificed Halal
>      meat traditionally lamb.  And is [sic] contrary to multiple
>      sections of 'RLUIPA'.

(ECF No. 1 ¶¶ 15–16 (these allegations are repeated, nearly verbatim, in paragraphs 27 and 28 of

the Complaint).)  These allegations do not connect Defendants to a specific underlying policy or

rights violation. Consequently, they are insufficient, under *Iqbal* and *Twombly*, to state a claim

against Defendants, and they must be dismissed under Rule 12(b)(6).[9]

## C. Statute of Limitations

Defendants next argue that the Court previously dismissed Abdul-Aziz's feast-meal

claims, except the RLUIPA claim as against the Treasury defendants, as untimely, and they urge

that such claims cannot be resurrected. Defendants are correct that the prior dismissals for

untimeliness stand. Nevertheless, as the feast-meal claims have already been dismissed, as

described above, further consideration of this point would be moot.

## D. Qualified Immunity

Defendants further contend, as an alternative argument, that Abdul-Aziz's claims must be

dismissed on the basis of qualified immunity. (ECF No. 4-1 at 19–22.) Abdul-Aziz responds

that his allegations identify a well-established constitutional violation, as Lanigan has previously

addressed similar issues. (ECF No. 5 at 3–4.)

"Qualified immunity is 'an entitlement not to stand trial or face the burdens of

litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages

unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official

violated the plaintiff's constitutional rights and (2) that the constitutional right violated was

clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

("[G]overnment officials performing discretionary functions . . . are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

---

[9] The Court notes that, given the lack of pleaded underlying facts, the feast-meal claim is also
ripe for dismissal pursuant to the Court's authority, under 28 U.S.C. § 1915(e)(2)(B), to sua
sponte screen complaints filed by litigants proceeding *in forma pauperis*. (*See* Civ. A. No. 14-
2026, Order, ECF No. 2 (permitting the plaintiffs to proceed *in forma pauperis*).)

constitutional rights of which a reasonable person should have known.").  A right is considered

clearly established if it is "sufficiently clear that every reasonable official would have understood

that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal

quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

While courts generally address the first prong—whether a constitutional violation is alleged—

first, a court may exercise discretion in considering these elements in the order it sees fit.

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity applies only to defendants in their individual capacities.  *Williams v.

Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 572 n.151 (3d Cir. 2017), *cert. denied sub nom. Walker

v. Farnan*, 138 S. Ct. 357 (2017) & *Williams v. Wetzel*, 138 S. Ct. 357 (2017).  Qualified

immunity also protects only against claims seeking damages.  *See Hill v. Borough of Kutztown*,

455 F.3d 225, 244 (3d Cir. 2006).

Following the analysis conducted above, the surviving claims for damages against

Defendants in their individual capacities are those under § 1983 and the NJCRA for denial of

daily Halal meals.  Abdul-Aziz's claim concerns the fact that he has been "denied any type of

Halal Meals that include meat," and he contends that this forces him "to prescribe [sic] to

vegetarianism, which is Not in accordance with Islamic tradition or doctrines."  (ECF No. 1 ¶¶

12–13.)

Although the Third Circuit has recognized that there may be circumstances in which a

prison's failure to accommodate religious dietary practices becomes a violation of First

Amendment rights, it has also repeatedly found that providing only vegetarian meals to

accommodate Halal-observant inmates is constitutionally acceptable.  *See Riley v. DeCarlo*, 532

F. App'x 23, 27–28 (3d Cir. 2013); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011);

*Williams v. Morton*, 343 F.3d 212, 217–21 (3d Cir. 2003). In *Williams v. Morton*, 343 F.3d 212,

Muslim inmates at New Jersey State Prison similarly challenged the policy of providing only

vegetarian meals and no Halal meat. *See id.* at 215–16. The Third Circuit rejected the Free

Exercise claim, finding the regulation reasonable and that the provided vegetarian meals

complied with Halal rules. *See id.* at 217–21. Similarly, in *Adekoya v. Chertoff*, 431 F. App'x

85, the Third Circuit affirmed this District's sua sponte dismissal of a claim that Bergen County

Jail officials had failed to provide him Halal meals. *Id.* at 87. The Court found that Adekoya

"failed to make out a First Amendment claim" because "he did not allege that he was denied

vegetarian meals or otherwise prevented from practicing his religion." *Id.* at 88. The Third

Circuit and this District have subsequently reached similar conclusions in other similar cases.[10]

*See Riley*, 532 F. App'x at 27–28 (affirming summary judgment dismissing Free Exercise claim

by inmate denied Halal meat diet); *Stathum v. Nadrowski*, Civ. A. No. 15-5502 (MAS) (TJB),

2016 WL 7411428, at *1, *5 (D.N.J. Dec. 22, 2016) (dismissing First Amendment claim by

plaintiff challenging Halal accommodation only with vegetarian meals); *McCray v. Passaic Cty.*

*Jail*, Civ. A. No. 13-6975 (WJM), 2013 WL 6199202, at *1, *3 (D.N.J. Nov. 27, 2013)

(dismissing upon screening Free Exercise claim challenging vegetarian Halal meals).

Accordingly, Abdul-Aziz has failed to show that Defendants' conduct related to daily

Halal meals violated his constitutional rights. As such, Defendants in their individual capacities

---

[10] Indeed, the Third Circuit has even previously rejected claims by Abdul-Aziz that the Free Exercise clause requires the NJDOC to provide him meals with Halal meat. *Abdul-Aziz v. Ricci*, 569 F. App'x 62, 66–67 (3d Cir. 2014). The Supreme Court subsequently vacated that judgment in order to permit further consideration of Abdul-Aziz's claims in light of the Supreme Court's interpretation of RLUIPA in *Holt v. Hobbs*. *Abdul-Aziz v. Ricci*, 135 S. Ct. 2803 (2015) (citing *Holt v. Hobbs*, 135 S. Ct. 853 (2015)).

are entitled to qualified immunity on the remaining § 1983 and NJCRA claims insofar as they

seek damages, and those claims will be dismissed.[11]

### E. Failure to State a New Jersey Statutory Claim

Finally, Defendants argue that Abdul-Aziz fails to state any claim under New Jersey state

law, as he "vaguely claims that the State Defendants violated unidentified New Jersey State

Statutory and common law provisions." (ECF No. 4-1 at 22.) They also contend that Abdul-

Aziz "vaguely states that Defendants violated the 'New Jersey Civil Rights act, Art. 1. Para. 3.

Of N.J. Constitution,'" and they argue that such assertions "without identifying a particular

statute or theory of liability" does not suffice to state a claim. (*Id.*)

For the reasons already discussed herein, the Court has already dismissed all claims

arising under the NJCRA. To any extent that Abdul-Aziz seeks to assert a claim under some

other provision of New Jersey law, he has failed to adequately plead such a claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint in this action,

(ECF No. 4), is GRANTED in part and DENIED in part, as follows: (1) Plaintiff's claims

regarding daily Halal meals, only insofar as they seek prospective injunctive relief, are permitted

to proceed; (2) all of Plaintiff's claims regarding feast meals are dismissed without prejudice; (3)

all of Plaintiff's claims seeking damages or declaratory relief are dismissed without prejudice;

(4) all of Plaintiff's claims pertaining to possession or confiscation of prayer oils were previously

dismissed with prejudice; and (5) to any extent that Plaintiff seeks to assert claims under other

---

[11] As noted above regarding the feast-meal claim, this claim could also be dismissed for failure
to state a claim under the Court's screening authority, pursuant to 28 U.S.C. § 1915(e)(2)(B).
*See supra* note 9.

provisions of New Jersey law, such claims are dismissed without prejudice.  An appropriate

order follows.


DATED:  February 26, 2018                    /s/ Freda L. Wolfson
                                             FREDA L. WOLFSON
                                             United States District Judge