**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAROB ABDUL-AZIZ, | : |
| | : |
| Plaintiff, | :    Civ. No. 17-2806 (FLW) (TJB) |
| | : |
| v. | : |
| | : |
| GARY M. LANIGAN et al., | :    **OPINION** |
| | : |
| Defendants. | : |
| | : |

**FREDA L. WOLFSON, U.S.D.J.**

Plaintiff Sharob Abdul-Aziz ("Abdul-Aziz" or "Plaintiff") is a state prisoner, presently incarcerated at East Jersey State Prison in Rahway, New Jersey. He is proceeding *pro se* with a civil rights complaint filed under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). ECF No. 1. Presently before the Court is a motion for summary judgment by Defendants Gary M. Lanigan, Andrew P. Sidamon-Eristoff, and Jignasa Desai-McCleary (collectively, "State Defendants"), seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. 56. ECF No. 45. For the reasons explained in this Opinion, the motion is GRANTED in part and DENIED in part. In light of the surviving RLUIPA claim, the Court will also appoint counsel under § 1915 pursuant to *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993), and administratively terminate this matter until counsel is assigned.

## I.    PROCEDURAL HISTORY & FACTUAL BACKGROUND

### a.  Procedural History

This action originated as *Abdul-Aziz v. Lanigan*, Civ. A. No. 14-2026 (FLW), ("the Prior Action") in which Abdul-Aziz, along with three other plaintiffs, William McCray, Ibn Pasha, and Charles Rashid, asserted § 1983 and RLUIPA claims against Lanigan, then-Commissioner of

the New Jersey Department of Corrections ("NJDOC"), Sidamon-Eristoff and Desai-McCleary, as officials with the New Jersey Department of the Treasury ("Treasury"), and Stephen D'Ilio, then-Administrator of New Jersey State Prison, who is no longer a party to this case. The plaintiffs in the Prior Action alleged interference with their religious exercise as practicing Muslims based on four distinct grounds: (1) denial of daily halal meats; (2) denial of donated halal feast meals; (3) prohibition and confiscation of personal prayer oils; and (4) failure to facilitate congregational prayer.[1] *See* Civ. A. No. 14-2026, Compl., ECF No. 1.

In March 2016, this Court granted in part and denied in part a motion to dismiss the Prior Action. Civ. A. No. 14-2026, ECF No. 27. Specifically, the Court found that Abdul-Aziz's § 1983 and NJCRA claims regarding denial of donated halal feast meals were time barred. *Id.* at 13–14. The Court also found that all claims by Abdul Aziz concerning confiscation of prayer oils were untimely. *Id.* It found the continuing-violation doctrine insufficient to preserve these claims. *Id.* at 14–16. Accordingly, these claims were dismissed without prejudice.[2] *Id.* at 15–16.

As defendants in the Prior Action were sued in their official capacities only, this Court dismissed with prejudice all claims for damages as barred by Eleventh Amendment immunity. *Id.* at 18–20. The Court noted that plaintiffs could move to amend their complaint to seek damages from the defendants in their individual capacities, but also indicated that RLUIPA

---

[1]  Abdul-Aziz had instituted a parallel action several years earlier, before Hon. Mary L. Cooper, U.S.D.J. (ret), *Abdul-Aziz v. Ricci*, Civ. A. No. 08-5764 (MLC) (DEA), which similarly asserted, among other claims, violations of § 1983 and RLUIPA concerning denial of halal feast meals and confiscation of prayer oils. In that action, he specifically challenged a policy change by New Jersey State Prison administration prohibiting possession of prayer oil and subsequent confiscation of such oil.  Civ. A. No. 08-5764, Am. Compl., ECF No. 5, ¶¶ 5, 36. The procedural course of that case is complex, but it suffices, for the purposes of this Opinion, to note that, after a remand from the United States Supreme Court, that action was settled and dismissed with prejudice. Civ. A. No. 08-5764, Stip. & Order, ECF No. 121.

[2]  The Court declined to dismiss claims asserted by the other plaintiffs in the Prior Action on timeliness grounds. *See* Civ. A. No. 14-2026, ECF No. 27 at 12–13.

claims may not be asserted against government employees in their individual capacities. *Id.* at 20.

Subsequently, Abdul-Aziz, who had by then transferred to East Jersey State Prison, filed an Amended Complaint, Civ. A. No. 14-2026, ECF No. 31, while the other plaintiffs moved to file a separate Amended Complaint, *see* Civ. A. No. 14-2026, ECF No. 43. Finding that the plaintiffs could not proceed with two independent complaints, the Court directed the plaintiffs to notify the Court as to whether they wished to remain as plaintiffs in the same action. ECF No. 45. After receiving the plaintiffs' responses, the Court found good cause to sever the matter into two actions, creating the instant proceeding, as well as *Rashid v. Lanigan*, Civ. A. No. 17-2805 (FLW).

Accordingly, Plaintiff Abdul-Aziz's Amended Complaint from the Prior Action became the operative Complaint in this proceeding on April 25, 2017. ECF No. 1.

On June 12, 2017, Defendants filed, on the docket of the Prior Action, a stipulation of dismissal, executed by Abdul-Aziz and on Defendants' behalf, which stated that "all of Plaintiff's claims against the Defendants pertaining to possession, retention, and/or use of Islamic prayer oils by State inmates, regardless of which theory or theories of recovery upon which those claims were or could have been based, are hereby DISMISSED WITH PREJUDICE." Civ. A. No. 14-2026, Stip., ECF No. 51. The Court so-ordered that stipulation the following day. Civ. A. No. 14-2026, Stip. & Order, ECF No. 52.

On July 20, 2017, State Defendants moved to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, under Rule 12(b)(6). ECF No. 4. On February 26, 2018, the Court granted the motion in part and denied it in part. *See* Op. & Order, ECF Nos. 8-9. The Court dismissed

without prejudice all § 1983 claims regarding feast meals and all claims under New Jersey law for failure to state a claim for relief. *Id.* The Court also dismissed with prejudice all claim for damages or declaratory relief against Defendants in their official capacities and noted that all claims pertaining to possession or confiscation of prayer oils were previously dismissed with prejudice. *Id.* The Court also granted qualified immunity to Defendants in their individual capacities on the Free Exercise claims regarding daily halal meals, but permitted § 1983 and RLUIPA claims regarding daily halal meals to proceed only insofar as they seek prospective injunctive relief. *See id.*

Defendants now move for summary judgment seeking dismissal of Plaintiff's remaining § 1983 and RLUIPA claims. *See* ECF No. 45. Plaintiff opposes dismissal and also attempts to clarify his § 1983 claims. ECF No. 46. In their reply, State Defendants argue that Plaintiff's First Amendment Establishment Clause claim should likewise be dismissed. *See* ECF No. 47. Plaintiff has filed a motion to strike State Defendants' reply brief. *See* ECF No. 52.

### b.  Factual Background & Summary Judgment Record

The Court construes the following facts in the light most favorable to Plaintiff. Plaintiff is an inmate currently incarcerated at EJSP. Defendants' Statement of Material Facts ("SOMF") ¶ 1; Complaint ¶ 5. It is undisputed for purposes of this motion that Plaintiff is a practicing Muslim, and currently receives the "religious vegetarian diet," which does not include halal meat. SOMF ¶¶ 3, 27-28; Complaint ¶¶ 12-13. Plaintiff maintains that State Defendants' denial of a religious diet that includes halal meat creates a substantial burden to his observance of Islam because he is either forced to be a vegetarian or eat non-halal meat, both of which are "not in accordance with Islamic tradition or doctrines." Complaint ¶¶ 12-13.

In support of his religious belief that he is required to eat halal meat, Plaintiff has provided a "Declaration from Ibrahim Rivera Regarding Islamic Vegetarianism." *See* ECF No. 46 at 10-11 ("Rivera Decl."). Rivera is Muslim, has a Bachelor of Arts degree from Penn State University, and a Certificate in Islamic Beliefs-Taybah Foundation from 2009, and currently teaches Intermediate Arabic, Islamic Prayer Class; and Islamic Beliefs, as an Inmate Muslim Coordinator. *See* Rivera Decl. ¶¶ 1-2. As explained by Rivera, "the Qur'an states at (HAJJ) 22:28- 'The beast of Cattle ... eat thereof'" and [t]his verse is a command verb in Arabic, stating an obligation of Muslim's [sic] eating meat. *Id.* ¶ 3. According to Rivera, "the Islamic Diet includes MEAT and this MEAT must be HALAL: Halal-Meat is defined in the Qur'an at (AL-MAIDAI-i) 5:3 – 'Forbidden to you (for food) are ... the meat ... on which Allah's Name has not been mentioned while slaughtering'" *Id.* ¶ 4. Rivera further asserts that "the Qur'an, The Sunnah of Prophet Muhammad (PBUH), and The Islamic Scholars (in Consensus) - REFUTE any such notion of a vegetarian diet for Muslims. Vegetarianism for Muslim's is an innovation-innovations are FORBIDDEN in Islam." *Id.* ¶ 5.

In their Statement of Material Facts ("SOMF"), State Defendants rely on two declarations. They provide a declaration from James Frank, who is an Administrative Analyst 3 in the Field Service Unit with the NJDOC, who oversees and ensures the operational and fiscal effectiveness of NJDOC's food services departments and coordinates the provision of nutritionally adequate and lower cost meals to inmates and NJDOC employees through food service operations' adherence to nutritional standards, Department of Health Sanitation regulations, and Department of Environmental Protection requirements. *See* Frank Decl. at ¶¶ 1-2. State Defendants also provide a declaration from Reverend Victor M. Lee, who is employed by NJDOC as the Coordinator of chaplaincy services and is responsible for the planning and

implementation of religious programs within NJDOC. *See* Lee Decl. at ¶¶ 1-2. He provides

consultation, support and coordination to all administrative units on matters related chaplaincy

services and religious activities, monitors and evaluates chaplaincy services and religious

activities, and also serve as chairperson of the Religious Issues Committee. *See id.* ¶ 2.

State Defendants provide an overview of the three general dietary plans for its inmate

population: the heart healthy diet, the religious vegetarian diet, and the kosher vegetarian diet.

SOMF ¶ 10; Frank Decl. ¶ 7. These dietary plans were chosen after careful consideration of the

most cost effective manner to satisfy the dietary needs of the broadest segment of the inmate

population possible using as few meal plans as possible, SOMF ¶¶ 11, 29, and in order to

improve efficiency in food service and reduce costs. SOMF ¶ 12, 30.

The heart healthy diet consists of both meat and vegetarian items, but is free of haram, or

"forbidden," foods, including pork, pork by-products or any its derivatives; blood; carnivorous

animals; reptiles or insects; and wine, ethyl alcohol or spirits. SOMF ¶¶ 8, 9, 13, 15, 17. The

heart healthy diet costs approximately $3.80 per inmate per day. Frank Decl. ¶ 15.

NJDOC also authorizes a special meal for Muslim inmates whose religious beliefs

require adherence to specific religious dietary laws. SOMF ¶ 23; Lee Decl. ¶ 6; ECF No. 49,

May 1, 2015 revision of the NJDOC Internal Management Procedures specific to Islam at 5

("Depending on the ruling of their school of religious law and the level of religious observation,

Muslims, upon request, must be provided a Religious Vegetarian Meal. Muslims must be

informed of all food items that may contain Pork and/or all its derivatives. Pork and its

derivatives are not to be served to Muslims."). Muslim inmates seeking dietary accommodations

for religious reasons may request the "religious vegetarian diet" and do so by completing and

submitting a special form to a chaplain. SOMF ¶¶ 24-25; *see* Lee Decl. ¶ 7. According to State

Defendants, the chaplain automatically approves the request, and the religious vegetarian meal will be immediately available to the inmate as an alternative at each of the three meals per day, seven days per week, to the heart healthy diet provided to the rest of the inmate population. SOMF ¶¶ 26, 34.

As its name suggests, the religious vegetarian diet does not contain any meat products, but includes meat substitutes designed to ensure adequate nutrition with regard to protein intake. *Id.* ¶¶ 35-36. State Defendants assert that the religious vegetarian diet complies with halal dietary restrictions despite its lack of halal meat. *See* Lee Decl. ¶¶ 10-11("Islamic jurisprudence, derived from the Qur'an, Hadith and Sunnah, specifies foods, which are halal, or 'lawful,' and those which are haram, or 'unlawful'" and "[t]he vegetarian diet offered by NJDOC satisfies these Islamic dietary requirements."). The religious vegetarian diet costs $2.95 per inmate per day and 557 inmates Department-wide receive the religious vegetarian diet daily. *See* Frank Decl. ¶¶ 26-27.

Defendants assert that the use of the religious vegetarian diet simplifies food preparation for inmates with specific religious dietary laws, and increases efficiency, as there are no novel or unique ingredients served to some persons and not to others. SOMF ¶ 30. This simplification reduces the number of inmate kitchen staff required for food service, and decreases the frequency of security checks of deliveries of foodstuff, which increases the security of NJDOC institutions. SOMF ¶ 31-32.

State Defendants further assert that Plaintiff's success in this action would require NJDOC to provide a particularized meal plan containing halal meats for the more than 4,000 Muslim inmates, who comprise over 34% of the total inmate population. SOMF ¶¶ 52, 40-42; *see* Lee Decl. ¶ 8 ("There are approximately 4,022 Muslim inmates in NJDOC custody,

comprising 34.20 of the total inmate population."). According to State Defendants, this additional diet plan would adversely affect efficiency and cost effectiveness by complicating food service, requiring more kitchen staff, and necessitating more officers to supervise the kitchen. SOMF ¶¶ 40-42. Moreover, State Defendants contend that if NJDOC offered a religious diet containing halal meats, it would likely also need to provide other particularized meal plans for inmates of various other faiths currently satisfied by the general heart healthy or religious vegetarian meal plans. SOMF ¶ 42.

It is undisputed that State Defendants also provide Jewish inmates with prepackaged kosher vegetarian meals.[3] SOMF ¶ 5. These kosher meals are prepackaged because kosher foodstuff cannot come into contact with non-kosher foodstuff.[4] SOMF ¶¶ 29, 43, 45, 52. There are approximately 152 Jewish inmates in NJDOC custody, comprising 1.3% of the total inmate population. Lee Decl. ¶ 9. The kosher vegetarian diet costs approximately $7.21 per inmate per day, and the majority of Jewish inmates (approximately 128 inmates Department-wide) receive the kosher vegetarian diet daily. Frank Decl. ¶¶ 34-35.

In his opposition brief, Plaintiff contends that Defendants already have a contract with a provider for kosher meals and could also provide prepackaged daily halal meals to him and similarly situated inmates within NJDOC. *See* Opposition Brief at 7-8. Although State Defendants do not provide the cost of prepackaged halal meals or the cost of preparing halal

---

[3] Plaintiff's Complaint does not state that the kosher meals are vegetarian, but he provides no evidence that they are not vegetarian, or that they are substantially different from the religious vegetarian diet provided to Muslim inmates.

[4] If the diet were not prepackaged, State Defendants would need to purchase kosher foodstuff; acquire additional kitchen equipment for the preparation of the foodstuff; procure separate preparatory space and storage space for kosher foodstuff and utensils; hire additional inmate workers; and hire additional officers to screen the additional food and supply deliveries. SOMF ¶ 46.

meats on site, Plaintiff has attached to his opposition papers a printout titled "Commercial & Institutional Food Trays" showing what appears to be a sample menu of prepackaged halal meals with pricing for breakfast, lunch, and dinner. *See* Opposition Brief at 14-20. The pricing for meals with halal meat range from $2.60-$3.40 per meal. *See id.*

Plaintiff also asserts that prisons in New York State, the Federal Bureau of Prisons, and the federal prison(s) at Guantanamo Bay provide Muslim inmates with halal meat, but he does not provide any sources for this information. Opposition Brief at 8.

In addition to providing Plaintiff with the religious vegetarian diet, State Defendants also offer Muslim inmates, including Plaintiff, alternative means of expressing their religious beliefs. SOMF ¶ 53; *See also* Lee Decl. ¶¶ 12-17. In addition to receiving the religious vegetarian diet, Plaintiff participates in worship services, has enjoyed access to religious education and counseling, and has been accommodated for religious observances. SOMF ¶ 61. He has attended Jumu'ah, or a congregational prayer involving a sermon and recitation of traditional prayers, led by an Imam on Friday afternoons. SOMF ¶¶ 54, 61. Plaintiff has participated in Taleem studies, or program of education including recitation and review of Qur'an, Hadith and Sunnah.  SOMF ¶¶ 57, 61. He is permitted to practice daily prayers and purchase limited quantities of oil through the commissary for use with his prayers.  SOMF ¶¶ 59, 61. Plaintiff is also accommodated for religious observances of significant holidays. SOMF ¶¶ 60-61. Plaintiff does not explicitly dispute these facts.

Finally, according to State Defendants, Plaintiff did not appeal his grievances complaining that he, and other similarly situated Muslim inmates, are entitled to meals containing halal meats to the Religious Issues Committee for review and decision on the matter

before pursuing this litigation.[5]  Lee Decl. ¶ 5. Plaintiff asserts that he is not required to appeal grievances to the Religious Issues Committee.[6] Opposition at 3.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v.*

---

[5] The Religious Issues Committee, of which Reverend Lee is a member, reviews appeals submitted by inmates in regard to religious issues and renders a final decision.  Lee Decl. ¶ 3. The Committee ensures the freedom of religious affiliation, voluntary worship and other religious rights, and reviews any restrictions thereof to ensure they are reasonable and related to penological interests of the NJDOC. *Id.* The Committee also ensures the establishment of a uniform protocol that addresses and complies with provisions of State and Federal laws regarding religious issues. *Id.* ¶ 3. The Religious Issues Committee is comprised of representatives from various faiths, including an Imam, to advise on how the issues before the Committee may intersect with a religion's particular practices and beliefs. *Id.* ¶ 4.

[6] Indeed, the State Defendants do not otherwise raise exhaustion of administrative remedies as an affirmative defense or provide any evidence showing that an appeal to the Religious Issues Committee is required in order to duly exhaust administrative remedies within the NJDOC. Because Defendants have not argued that Plaintiff failed to exhaust administrative remedies or argued that his failure to appeal to the Religious Issues Committee is otherwise relevant to the Court's analysis, the Court does not discuss it further.

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Thus, there can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

A document filed *pro se* is to be "liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In addition, when considering a motion in a *pro se* plaintiff's proceedings, a court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999). Nevertheless, on a motion for summary judgment, "a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion

for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa.

May 10, 2007). "[M]erely because a non-moving party is proceeding *pro se* does not relieve him

of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material

fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

### III.   ANALYSIS

Plaintiff's allegations that his religious exercise is substantially burdened by the food

policies at NJDOC implicates RLUIPA and the First Amendment Free Exercise Clause. *See*

Complaint ¶¶ 12-13. Plaintiff also asserts that State Defendants' decision to deny a religious diet

that includes halal meat to Plaintiff and other similarly situated Muslim inmates while

simultaneously providing prepackaged kosher meals to Jewish inmates constitutes an unlawful

"Establishment" of religion under the First Amendment and likewise violates his equal

protection rights under the Fourteenth Amendment. *See* Complaint at ¶ 14. The Court begins

with the constitutional claims brought pursuant to 42 U.S.C. § 1983 followed by Plaintiff's

RLUIPA claim.

### a.   Plaintiff's Constitutional Claims Under § 1983

### i.   First Amendment – Free Exercise Claim

The Court begins by noting that Plaintiff now contends that his Complaint does <u>not</u> raise

a First Amendment Free Exercise claim and states the following in his opposition brief: "District

Court and Defendants, continue to WRONGLY assert/insist, Plaintiff made claims under <u>Free</u>

<u>Exercise Clause</u>. This is INCORRECT. Plaintiff claims are, and have consistently been under 1st

Amendment <u>ESTABLISHMENT CLAUSE</u>." Opposition Brief at 5 (Emphasis in original).[7] In

---

[7] Plaintiff's Complaint does not explicitly mention the First Amendment Free Exercise Clause
but provides facts to suggest that the denial of a religious diet that includes halal meat
substantially burdens his religious exercise. The threshold question in a First Amendment Free
Exercise <u>and</u> a RLUIPA claim is whether the prison's challenged policy or practice has

its prior opinion, the Court granted qualified immunity to the individual State Defendants on Plaintiff's damages claims in their personal capacities as to the Free Exercise claim, as the Third Circuit has repeatedly found that providing only vegetarian meals to accommodate halal-observant inmates comports with the First Amendment. *See Riley v. DeCarlo*, 532 F. App'x 23, 27–28 (3d Cir. 2013); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011); *Williams v. Morton*, 343 F.3d 212, 217–21 (3d Cir. 2003). Thus, the State Defendants seek summary judgment on the remaining Free Exercise claim for injunctive relief. For completeness, the Court now addresses this claim.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Once a prisoner shows a substantial burden on religious exercise, the policy or practice is invalidated only if it is not reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012).

To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, the court weighs the following factors in assessing the overall reasonableness of a prison regulation: "whether the regulation has a 'valid, rational connection' to a legitimate government interest;

---

substantially burdened the practice of the inmate-plaintiff's religion. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (citing *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007)). For this reason, the State Defendants and the Court construed Plaintiff to raise a Free Exercise claim along with his RLUIPA claim, which is discussed separately below.

whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmate and prison resources; and whether there are any 'ready alternatives' to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quoting *Turner*, 482 U.S. at 89-91); *see also Fraise v. Terhune*, 283 F.3d 506, 513-14 (3d Cir. 2002). "'[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003).

The Third Circuit's published decision in *Williams v. Morton, supra*, guides the Court's analysis of Plaintiff's Free Exercise claim. There, Muslim inmates at New Jersey State Prison challenged the same policy of providing only vegetarian meals with no halal meat, and the district court granted summary judgment to prison officials after applying the *Turner* factors. *See id.* at 215–16. In affirming the grant of summary judgment on the plaintiff's Free Exercise claim, the Third Circuit analyzed the first *Turner* factor and agreed that the record evidence established that "providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget." *Id.* at 218. The Third Circuit next concluded that "the prison provides Muslim inmates with the opportunity to pray daily, attend special weekly services, and observe religious holidays", and [t]hus, the second *Turner* factor weigh[ed] in favor of the Prison Officials." *Id.* at 219. As to the third and fourth *Turner* factor, the Third Circuit affirmed the District Court's conclusions that "providing Halal meat meals to hundreds of prisoners would have a marked effect on the prison community" and that "providing Halal meat meals cannot be provided at a de minimis cost." *Id.* at 221. The Third Circuit thus affirmed the district court's grant of summary

judgment on the Free Exercise claim.[8] *See id*. As explained below, analyzing the *Turner* factors in this case yields the same result as it yielded in *Williams*.

As to the first *Turner* factor, the state chose its three diet plans to satisfy the dietary needs of the broadest segment of the inmate population possible using as few meal plans as possible, SOMF ¶¶ 11, 29, in order to improve efficiency in food service and reduce costs. SOMF ¶ 12, 30. State Defendants' aver that use of the religious vegetarian diet simplifies food preparation for inmates with specific religious dietary laws, and increases efficiency, SOMF ¶ 30, reduces the number of inmate kitchen staff required for food service, and decreases the frequency of security checks of deliveries of foodstuff, which increases the security of NJDOC institutions. SOMF ¶ 31-32. This uncontroverted evidence demonstrates that the regulation "is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget[,]" *Williams*, 343 F. 3d at 218, and thus the first factor weighs in favor of the State Defendants.

---

[8] Since *Williams*, the Third Circuit has consistently rejected similar Free Exercise claims. In *Adekoya v. Chertoff*, 431 F. App'x 85, for example, the Third Circuit affirmed this District's *sua sponte* dismissal of a claim that Bergen County Jail officials had failed to provide him halal meals. *Id.* at 87. The court found that Adekoya "failed to make out a First Amendment claim" because "he did not allege that he was denied vegetarian meals or otherwise prevented from practicing his religion." *Id.* at 88; *see also Riley*, 532 F. App'x at 27–28 (affirming summary judgment dismissing Free Exercise claim by inmate denied halal meat diet); *Stathum v. Nadrowski*, Civ. A. No. 15-5502 (MAS) (TJB), 2016 WL 7411428, at *1, *5 (D.N.J. Dec. 22, 2016) (dismissing First Amendment claim by plaintiff challenging halal accommodation only with vegetarian meals); *McCray v. Passaic Cty. Jail*, Civ. A. No. 13-6975 (WJM), 2013 WL 6199202, at *1, *3 (D.N.J. Nov. 27, 2013) (dismissing at screening Free Exercise claim challenging vegetarian halal meals). Indeed, the Third Circuit has even previously rejected claims by Abdul-Aziz that the Free Exercise Clause requires the NJDOC to provide him meals with halal meat. *Abdul-Aziz v. Ricci*, 569 F. App'x 62, 66–67 (3d Cir. 2014). The Supreme Court subsequently vacated that judgment in order to permit further consideration of Abdul-Aziz's claims in light of the Supreme Court's interpretation of RLUIPA in *Holt v. Hobbs*. *Abdul-Aziz v. Ricci*, 135 S. Ct. 2803 (2015) (citing *Holt v. Hobbs*, 135 S. Ct. 853 (2015)).

As to the second *Turner* factor, the State Defendants have provided evidence that Plaintiff is offered alternative means expressing his Muslim religious beliefs. SOMF ¶ 53; *see also* Lee Decl. ¶¶ 12-17. When analyzing the second Turner factor, "courts must examine whether an inmate has alternative means of practicing his or her religion generally, not whether an inmate has alternative means of engaging in the particular practice in question." *DeHart v. Horn*, 227 F.3d 47, 55, 57 (3d Cir. 2000) (citations omitted)( explaining that if "the prison does afford the inmate alternative means of expressing his religious beliefs, that fact tends to support the conclusion that the regulation at issue is reasonable."). Here, Plaintiff participates in worship services, has enjoyed access to religious education and counseling, and has been accommodated for religious observances. SOMF ¶ 61. He has attended Jumu'ah, SOMF ¶¶ 54, 61, participated in Taleem studies, SOMF ¶¶ 57, 61, and is permitted to practice daily prayers and purchase limited quantities of oil through the commissary for use with his prayers.  SOMF ¶¶ 59, 61. Plaintiff is also accommodated for religious observances of significant holidays. SOMF ¶¶ 60-61. As Plaintiff does not dispute that the prison provides him and other Muslim inmates with these opportunities to practice his religion, the second Turner also factor weighs in favor of the State Defendants. *See Williams*, 343 F.3d at 219.

As to the third *Turner* factor, State Defendants assert that if the NJDOC provided Plaintiff and other Muslim inmates a special diet containing halal meats, though the religious vegetarian diet is designed to accommodate all or almost all religious dietary restrictions, inmates of other faiths may perceive that Muslim inmates were treated more favorably, or demand a more particularized diet as well. SOMF ¶¶ 40-42. As Defendants argue, this perception "could negatively affect prison morale and discipline." *Smith v. Kyler*, 295 F. App'x. 479, 482 (3d Cir. 2008) (explaining that if the department of corrections "hired a Rastafarian chaplain but

did not provide a chaplain for similarly-sized groups, Rastafarians could appear to be favored, a perception that could negatively affect prison morale and discipline") (citing *Adkins v. Kaspar*, 393 F.3d 559, 565 (5th Cir. 2004)). As such, the third *Turner* factor likewise weighs in favor of State Defendants.

Finally, it notable that the fourth *Turner* factor does not impose a least-restrictive-alternative test. *See Fraise,* 283 F.3d at 520 (citation omitted). Rather, "the inquiry is whether there are alternatives that would impose only 'de minimis cost to valid penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 91). As in *Williams*, 343 F.3d at 221, the record in this matter shows that a religious diet that includes halal meat cannot be provided at a de minimis cost. Defendants have provided evidence that adding a diet plan that includes halal meat in addition to the religious vegetarian diet would adversely affect efficiency and cost effectiveness by complicating food service, requiring more kitchen staff, and necessitating more officers to supervise the kitchen. SOMF ¶¶ 40-42. Plaintiff has also submitted evidence suggesting that prepackaged meals that include halal meat range from $2.60-$3.40 per meal. *See* Opposition Brief at 14-20. Such costs are hardly de minimis, even assuming not all Muslim inmates would be entitled to a religious diet with halal meat.

Because Plaintiff's Free Exercise claim fails under the *Turner* factors, the Court will grant summary judgment to the State Defendants on the remaining claim for injunctive relief.[9]

---

[9] The facts that give rise to Plaintiff Free Exercise claim also form the basis for his claim under RLUIPA, which is an easier standard for Plaintiff to meet and survives summary judgment for the reasons explained below. As such, Plaintiff may be entitled to injunctive relief to the extent he ultimately prevails on his surviving RLUIPA claim.

ii.     **Fourteenth Amendment Equal Protection Claim**

Plaintiff also contends that his equal protection rights are violated because State Defendants provide Jewish inmates kosher meals, but have declined to provide him, and other Muslim inmates, religious meals containing halal meat. SOMF ¶ 5; Complaint ¶ 14. The Equal Protection Clause of the Fourteenth Amendment to our Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Generally, prison officials cannot discriminate against inmates of different religions. *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam). Nevertheless, an inmate "cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" *DeHart*, 227 F.3d at 61 (citation omitted).

In *Williams*, *supra*, 343 F.3d at 222, the Third Circuit rejected the same type of equal protection claim where Jewish and Muslim inmates were both provided vegetarian religious meals. *See id.* ("Because all religious meals at NJSP are vegetarian, we reject Prisoners' equal protection claim that the prison treats Jewish and Muslim prisoners in a "disparate and unequal" manner."); *see also Adekoya*, 431 F. App'x. at 88 (same).

The evidence presented by the State Defendants, which is unrefuted by Plaintiff, shows that Plaintiff and other Muslim inmates in NJDOC custody are not treated differently from Jewish inmates with respect to their religious diets. Although the kosher meals provided to Jewish inmates are prepackaged to comply with religious requirements of Judaism, the kosher vegetarian diet, like the religious vegetarian diet, do not contain meat, SOMF ¶¶ 5, 10, 29, 43, 45, 52, and Plaintiff has provided no evidence that the kosher vegetarian meals are appreciably different from the religious vegetarian meals that he and other Muslim inmates are provided. For

this reason, the Court also grants summary judgment to the State Defendants on Plaintiff's equal protection claim.

### iii.    First Amendment – Establishment Clause Claim

In his opposition papers, Plaintiff points out that his Complaint also mentions the Establishment Clause in connection with the NJDOC's provision of kosher vegetarian meals to Jewish inmates, a claim that neither State Defendants nor the Court previously construed. State Defendants did not move for summary judgment on Plaintiff' Establishment Clause claim, and raise arguments for dismissal of that claim for the first time in their reply brief. ECF No. 47. Plaintiff asks the Court to strike the Reply and to decline to consider these arguments, as they were not raised in the initial summary judgment motion. *See* ECF No. 52. The Court agrees that Plaintiff, who is proceeding *pro se*, was not on notice that State Defendants sought summary judgment on his Establishment Clause claim.

Nevertheless, Plaintiff is proceeding *in forma pauperis*, and his Complaint is subject to the Court's *sua sponte* screening authority under 28 U.S.C. § 1915(e)(2)(B). The plain language of the statute covering "[p]roceedings *in forma pauperis*" provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case <u>at any time</u> if the court determines that-... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i) (emphasis added); *see also Doherty v. Donahoe*, 985 F. Supp. 2d 190, 206 (D. Mass. 2013)(finding that "remaining part of the complaint that is not subject to defendant's summary judgment motion is subject to dismissal under 28 U.S.C. § 1915(e)(2)"); *Barrett v. Pearson*, 355 F. App'x. 113, 116 (10th Cir. 2009) (finding that district court did not exceed its authority by dismissing plaintiff's complaint as

frivolous under § 1915(e)(2)(B)(i) instead of ruling on defendants' motion for summary judgment); *see also Fogle v. Pierson*, 435 F.3d 1252, 1256, 1262 (10th Cir. 2006) (performing screening of *in forma pauperis* prisoner complaint for the first time on appeal because "§ 1915[(e)(2)(B)(i)] mandates the dismissal of a claim contained in an IFP complaint 'at any time' a court deems the complaint to be frivolous.").

Here, Plaintiff's Complaint asserts that providing Jewish inmates kosher meals while denying Muslim inmates religious meals that include halal meat violates the Establishment Clause. This assertion, without more, fails to state a claim for relief. In determining whether governmental action violates the First Amendment's Establishment Clause, the Supreme Court has set forth a three-prong approach in *Lemon v. Kurzman*, 403 U.S. 602, 612-13 (1971). A challenged action is unconstitutional if (1) it lacks a secular purpose; (2) its primary effect either advances or inhibits religion; or (3) fosters "an excessive government entanglement with religion." *Id.*

In *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 817 (8th Cir. 2008), the plaintiff similarly alleged that the Bureau of Prisons defendants had "singled out the Jewish faith as the only faith to whom a religious diet was to be provided and singling out such faith as the only faith for whom provisions would be made for religious holidays constituted discrimination and violated the Establishment Clause's prohibition." Although the district court had not addressed the Establishment Clause claim, the Eighth Circuit rejected it on appeal, finding that the plaintiff failed to assert an alleged injury and lacked standing to pursue the Establishment Clause claim. *Id.* The Court further noted that the plaintiff sought accommodations of his religious beliefs in the prison's meal plans, and "a successful Establishment Clause claim would strike down any

accommodation of religious beliefs in the prison's meal plans, which would effectively eviscerate the remedy [the plaintiff] sought in his complaint." *Id.*

Here too, Plaintiff provides no facts in his Complaint showing that he has been injured by the provision of kosher meals to Jewish inmates and also seeks additional religious accommodations beyond those already provided by the religious vegetarian diet. Because he fails to plead injury, the Court dismisses this claim pursuant to the Court's broad screening authority under § 1915(e)(2)(B).[10] The Court denies Plaintiff's motion to strike Defendants' Reply as moot, in light of the Court's dismissal of the Establishment Clause claim under the Court's screening authority.

### b. Plaintiff's RLUIPA Claim

The Court next considers whether State Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim that their meal policy, which fails to provide him a religious diet that includes halal meat, substantially burdens his religious exercise. In 2015, in *Holt v. Hobbs*, the Supreme Court clarified that RLUIPA "provide[s] very broad protection for religious liberty."[11] 574 U.S.  352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden

---

[10] Furthermore, it is worth noting that the Supreme Court has repeatedly held that the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984). "Anything less would require the 'callous indifference' we have said was never intended by the Establishment Clause." *Id.* (citations omitted); *see also Hobbie v. Unemp. App. Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987) ("This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.").

[11] As this Court has noted in its prior decisions, "RLUIPA does not allow for the recovery of money damages; in other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief." *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (internal citation omitted).

results from a rule of general applicability," unless the government can satisfy strict scrutiny. 42 U.S.C. § 2000cc-1(a). This requires a showing that the burden imposed on a person's religious exercise "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." § 2000cc-1(a)(1)–(2). Even prior to *Holt*, lower courts recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006)).

Under RLUIPA's burden shifting framework, a plaintiff must first show that the defendant has placed a substantial burden on the plaintiff's sincerely held religious belief. *See Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation, *Holt*, 574 U.S. at 360–61 (citing *Hobby Lobby*, 573 U.S., at 717, n. 28), but he is not required to prove that the religious practice at issue is a tenet of his or her religion or otherwise required by his or her religion. *See id.* Moreover, once a plaintiff shows that his religious belief is sincerely held, it is not the Court's purview to question the reasonableness of the belief or "to say that [plaintiffs'] religious beliefs are mistaken or insubstantial," *Hobby Lobby*, 573 U.S. at 725.

RLUIPA also defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). And "the 'exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990),

superseded on other grounds by statute. The consumption of halal meat—falls within this "capacious[ ]" definition, *Holt*, 574 U.S. at 358, and State Defendants do not argue otherwise.

Plaintiff asserts that his Muslim faith requires him to consume halal meat and forbids vegetarianism, and he has provided an expert's opinion to substantiate these views. Furthermore, at least one recent circuit court decision in the RLUIPA context has recognized that a sect of Islam share Plaintiff's view that Muslims must eat meat. In *Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019), a plaintiff brought suit under RLUIPA asserting that members of his sect within Islam "believe that the holy Qur'an plainly commands him to 'eat what is on earth, Lawful and good'—including meat." The Seventh Circuit noted that "[s]ome Muslim scholars support Jones's interpretation, and the Imam employed by the DOC agreed that Jones's view is 'a valid opinion' shared by some other Muslims, though not the Imam himself." *Id.*

Defendants dispute that consuming halal meat is a tenet of Muslim faith, but they do not provide any evidence disputing the sincerity of Plaintiff's belief and the Court deems this issue undisputed for purposes of this motion.[12]

Under RLUIPA's second step, Plaintiff must establish that the NJDOC's food policy of providing the religious vegetarian diet and denying halal meat substantially burdens his exercise of religion. 42 U.S.C. § 2000cc-1(a); *Holt*, 574 U.S. at 361. The Third Circuit has held that "[a] substantial burden exists for the purposes of RLUIPA if '(1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to

---

[12] The Court does not make any findings of fact with regard to the sincerity of Plaintiff's belief that he must consume halal meat. Nor does the Court determine whether Plaintiff sincerely believes that he must consume halal meat at every meal, on daily basis, or as a part of his general diet. These issues require an assessment of Plaintiff's credibility and are not properly resolved on summary judgment.

receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Banks v. Pennsylvania Dep't of Corr.*, 601 F. App'x. 101, 105 (3d Cir. 2015) (citing *Washington*, 497 F.3d at 280 (3d Cir. 2007))

State Defendants argue that Plaintiff fails to show that he has been substantially burdened by his religious exercise for the following reasons: (1) his allegations of substantial burden are conclusory and lack sufficient evidentiary support; (2) the religious vegetarian diet complies with halal dietary restrictions; and (3) Plaintiff has been provided abundant other opportunities to practice his religion. *See* Summary Judgment Brief at 25.

In his opposition brief, Plaintiff asserts that the State Defendants' refusal to provide him a diet with halal meat forces him to either become a vegetarian or consume non-halal meat—both of which violate his sincerely held religious beliefs that he, as a Muslim, must consume a diet that includes halal meat. Opposition Brief at 7-8. As noted above, he supports his allegations that Muslims must consume halal meat and may not be vegetarians with a declaration from a religious expert. *See* Rivera Decl. ¶¶ 1-4. Thus, unlike the plaintiff in *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (finding that denial of a small, quartz crystal did not substantially burden the plaintiff's religious exercise where no evidence other than plaintiff's assertion and scant sources supported his claim) on which State Defendants rely, Plaintiff's allegations are not conclusory and are supported by an expert's declaration. State Defendants' argument that the religious vegetarian diet technically complies with halal dietary restrictions is disputed and does not address Plaintiff's particular religious belief that his diet must include halal meat.

The Seventh Circuit's decision in *Jones*, *supra* is instructive as to the legal test for substantial burden in the wake of the Supreme Court's decision in *Holt*. There, plaintiff argued his religious exercise was substantially burdened by the failure to provide him with halal meat as

a regular part of his diet.[13] The sole issue the DOC raised on appeal was whether the district court erred in holding that the plaintiff was substantially burdened by the vegetarian kosher diet when he could have purchased the halal meat he needs to supplement his diet at the prison commissary. *Id.* at 1149. The Seventh Circuit explained that in forcing an indigent prisoner "to give away his last dime so that his daily meals will not violate his religious practice, it is imposing a substantial burden." *Id.* Here, Plaintiff does not have the option to buy halal meat at the commissary. Instead, the NJDOC's food policy provides Plaintiff with two meal options – both of which violate his religious beliefs, and neither of which provide him with halal meat.

Finally, the Court notes that State Defendants rely entirely on pre-*Holt* caselaw in arguing that Plaintiff has not established a substantial burden because he is provided other religious accommodations. As the Supreme Court in *Holt* made clear, RLUIPA's "substantial burden" inquiry asks whether the government has substantially burdened religious exercise (here, Plaintiff's ability to consume a diet that includes halal meat), not whether the RLUIPA claimant is able to engage in other forms of religious exercise. *See Holt*, 574 U.S. at 362 (explaining that for the First Amendment, "the availability of alternative means of practicing religion is a relevant consideration, but RLUIPA provides greater protection."). Thus, in *Holt*, the Supreme Court concluded that prison officials' allowance of a Muslim inmate to have a prayer rug and access to a religious advisor did not alleviate the substantial burden on his religious exercise they imposed by barring him from growing a beard. *Holt*, 574 U.S. at 361–62 (explaining that that the plaintiff met this burden by showing that the prison grooming policy left him with the choice between

---

[13] Unlike Plaintiff here, the plaintiff in *Jones* did not take the position that he needs to eat meat with every meal or even every day, but instead believes halal meat must be a regular part of his diet. *Id.*

shaving his beard, and thus violating his religious beliefs, or growing his beard, and facing serious disciplinary action).

Here, the Court finds that Plaintiff meets his burden on this motion to show that State Defendants' food policy substantially burden his religious exercise, as he has provided sufficient evidence that consuming either the religious vegetarian diet or the heart healthy diet would cause him to violate his religious belief that he must consume halal meat. As such, summary judgment is denied without prejudice on this issue.

If a prisoner plaintiff shows that a policy or practice substantially burdens a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so.  *See Holt*, 574 U.S. at 362. As explained by the Supreme Court in *Cutter v. Wilkinson*, 544 U.S. 709, religious accommodations do not override other significant interests in maintaining order and safety, and courts should give deference to prison officials "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723. As such, costs, limited resources, and prison security are all compelling state interests. *Id.*

Nevertheless, the Supreme Court in *Holt* clarified that the least-restrictive-means standard is "exceptionally demanding," and it "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 364–65 (citations and alterations omitted).

State Defendants' summary judgment brief provides <u>no specific arguments</u> that denying Plaintiff a diet that includes halal meat furthers a compelling government interest <u>and</u> is the least restrictive means of doing so, as required by the Supreme Court in *Holt*. Although State

Defendants may be able to provide evidence that they have compelling interests at stake, they have not met that burden and have provided no evidence that denying Plaintiff all halal meat in favor of the religious vegetarian diet is the least restrictive method of controlling costs, reducing administrative burdens, or addressing security concerns.

The Third Circuit has not yet provided any guidance to district courts grappling with RLUIPA claims post-*Holt*, but other circuit courts have required Defendants to make a particularized showing that the challenged food policy is the least restrictive method of implementing their compelling state interests.

In *Williams v. Annucci*, 895 F.3d 180, 190 (2d Cir. 2018), for instance, the plaintiff sought relief under RLUIPA because the department of corrections ("DOC") refused to accommodate his dietary restrictions imposed on him by his Nazarite Jewish faith. The district court granted summary judgment to the DOC, and plaintiff argued on appeal that the district court "misunderstood, post-*Holt*, the extent to which the DOC's evidence of a compelling interest and least restrictive alternatives must be particularized to adequately respond to [the plaintiff's] specific request for accommodations." *Id.* at 186. The DOC justified its refusal to accommodate the plaintiff's dietary requirements by generally citing its compelling interest in controlling costs and avoiding administrative burdens. *See id.* at 190.

In finding that the DOC failed to make the required showing, the Second Circuit "observe[d] that the government's interest in reducing costs is less compelling in the RLUIPA context than it is elsewhere . . . because RLUIPA explicitly states that complying with its terms 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise,' codifying a congressional preference that prisons incur additional costs to accommodate inmates' free exercise rights." *Id.* (citing 42 U.S.C. § 2000cc-

3(c)). It also rejected the DOC's argument that the plaintiff's dietary requests were administratively burdensome because "it would lead to more requests for accommodation from inmates" as the "'classic rejoinder of bureaucrats throughout history' rejected by the Supreme Court in *Holt*." *Id.* (citing *Holt*, 574 U.S. at 368 (internal quotation marks and citations omitted). The Second Circuit also explained that the sincerity requirement in RLUIPA has the effect of "narrowing the pool of potential accommodations" and ensuring "that accommodations are only available to the few who sincerely hold protected beliefs." *Id.* (citing *Holt*, 574 U.S. 369-70) (noting that if prison officials suspect inmates are using accommodations in bad faith "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic").

Similarly, in *United States v. Secretary, Fla. Department of Corrections*, 828 F.3d 1341, 1348–49 (11th Cir. 2016), the state defendant argued that denying a kosher diet statewide was the least restrictive means of furthering Florida's interest in cost containment, but the circuit court found that the state defendant failed to explain why the department cannot offer kosher meals when the Federal Bureau of Prisons and other states do so, failed to explain why it cannot offer kosher meals when it offers vegan, medical, and therapeutic diets at similar marginal costs, and failed to explain why the less restrictive alternative of enforcing rules that limit access to, and continued participation in, the program would not further the stated interest. *See id.* As to the latter, the circuit court noted that the DOC did not screen out insincere applicants or enforce the rules of participation in the program and asserted that it is too time-intensive, but failed to provide any evidence to that effect. *See id.*

These decisions are particularly relevant here, as the State Defendants rely generally on the costs, administrative burdens, and security concerns associated with providing halal meat to

Muslim inmates without quantifying the specific costs or explaining the other burdens and concerns in detail, as required to meet strict scrutiny. They also assume that the more than 4000 Muslim inmates within NJDOC would be entitled to a religious diet that include halal meat if Plaintiff were to succeed on his RLUIPA claim, but provide no evidence that a specific percentage of Muslim inmates within the NJDOC hold the sincere belief that they must consume halal meat.[14] *See, e.g., Jones v. Carter*, 915 F.3d at 1152 (affirming district court's finding of RLUIPA violation and noting that Muslim plaintiff's belief that eating meat is a requirement for devout Muslims appears to be a minority view within Islam). Indeed, only 557 inmates currently elect the religious vegetarian diet; thus a large portion of the Muslim inmate population presumably elects the heart healthy diet.

Nor have State Defendants made the required showing that it has implemented the least restrictive alternative to Plaintiff's specific request for accommodations, *see, e.g.*, *Barros v. Wetzel*, 2017 WL 1179970, at *8 (M.D. Pa. Mar. 2, 2017) (denying summary judgment on RLUIPA claim based on "the conclusory nature of the defendant's assertions" and noting that "critical issues are left for speculation"), or shown that that it has considered alternatives that are less burdensome to Plaintiff's religious exercise, such as the occasional provision of halal meat.

For these reasons, the Court denies without prejudice State Defendants' motion for summary judgment on Plaintiff's RLUIPA claim that he is denied a religious diet that includes halal meat.

---

[14] The Court also notes in this regard that Plaintiff purports to bring this action on behalf of other Muslim inmates that are similarly situated to him and this action previously included three other plaintiffs who are at least arguably similarly situated to Plaintiff. But this matter is not a class action and "a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates." *See Alexander v. New Jersey State Parole Bd*, 160 F. App'x 249, 250 n.1 (3d Cir. 2005) (per curiam) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *Wallace v. Smith*, 145 F. App'x 300, 302 (11th Cir. 2005)).

### c.  Appointment of Counsel

Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte*. *See Tabron v. Grace*, 6 F.3d  147, 156 (3d Cir. 1993).[15] The Court has examined the *Tabron* factors and determined that appointment of counsel is warranted at this time for the purpose of settlement and/or trial on the RLUIPA claim.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 45), is GRANTED in part and DENIED in part, as follows: (1) summary judgment is GRANTED as to Plaintiff's First Amendment claim (Free Exercise Clause) regarding the denial of a religious diet that includes halal meat and his equal protection claim arising from the provision of kosher meals to Jewish inmates; (2) summary judgment is DENIED WITHOUT PREJUDICE as to Plaintiff's RLUIPA claim regarding the denial of a religious diet that includes halal meat. The Court also dismisses without prejudice Plaintiff's First Amendment claim (Establishment Clause) arising from the provision of kosher meals to Jewish inmates pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). At this time the Court will also appoint counsel *sua sponte* and administratively terminate this matter until counsel is assigned. An appropriate Order follows.

_____

[15] In deciding whether to appoint counsel the Court considers the following factors: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the  applicant's claims' (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. *Tabron*, 6 F.3d at 155-157.

DATED:  June 18, 2020                              /s/ Freda L. Wolfson
                                                   FREDA L. WOLFSON
                                                   U.S. Chief District Judge