**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAROB ABDUL-AZIZ, | : |
| Plaintiff, | : Civ. No. 17-2806 (RK) (TJB) |
| v. | : |
| GARY M. LANIGAN et al., | : **OPINION** |
| Defendants. | : |

This matter comes before the Court on State Defendants Gary M. Lanigan, Andrew P. Sidamon-Eristoff, and Jignasa Desai-McCleary (collectively, "State Defendants") second motion for summary judgment. (ECF No. 117.) State Defendants seek dismissal of Plaintiff Sharob Abdul-Aziz's ("Abdul-Aziz") or ("Plaintiff") remaining claim for injunctive and declaratory relief under and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). For the reasons explained below, the motion for summary judgment is DENIED. In light of the age of this matter, the Court requests that the Magistrate Judge appoint counsel for Plaintiff. Once counsel enters an appearance, the Court will conduct a settlement conference. Since the only remedies available to Plaintiff under RLUIPA are equitable in nature, the Court will schedule a bench trial if settlement negotiations fail.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

### a. Procedural History

This matter began in 2014 and was captioned *Abdul-Aziz v. Lanigan*, Civ. A. No. 14-2026 (FLW), ("the Prior Action"). In the Prior Action, Abdul-Aziz, along with three other plaintiffs, William McCray, Ibn Pasha, and Charles Rashid, asserted § 1983 and RLUIPA claims against Lanigan, then-Commissioner of the New Jersey Department of Corrections ("NJDOC"), Sidamon-

Eristoff and Desai-McCleary, as officials with the New Jersey Department of the Treasury ("Treasury"), and Stephen D'Ilio, then-Administrator of New Jersey State Prison, who is no longer a party to this case. The plaintiffs in the Prior Action alleged interference with their religious exercise as practicing Muslims based on the following: (1) the denial of daily halal meats; (2) the denial of donated halal feast meals; (3) the prohibition and confiscation of personal prayer oils; and (4) the failure to facilitate congregational prayer. (*See* Civ. A. No. 14-2026, Complaint, ECF No. 1.) As relevant here, Count One of the 2014 Complaint alleged that the NJDOC's food policy subjected the plaintiffs "to Religious Intolerance through the denial of Halal Meals including meat daily, subjecting them to forced vegetarianism[,]" which substantially burdened their religious exercise. (*Id.* at ¶ 36.)

In March 2016, the Court issued an Order granting in part and denying in part defendants' motion to dismiss the 2014 Complaint. (*See* Civ. A. No. 14-2026, ECF No. 27.) The District Court dismissed Plaintiff's Abdul Aziz's state and federal constitutional feast meal claims, the RLUIPA feast meal claims, and the confiscation of prayer oil claims as untimely. (*Id.*) The Court also dismissed all official capacity claims for damages. (*Id.*) The Court denied the motion to dismiss on the RLUIPA claim based on the denial of daily halal meat and provided leave to amend. (*Id.*)

Subsequently, Plaintiff Abdul-Aziz, who had by then transferred to East Jersey State Prison, filed an Amended Complaint, Civ. A. No. 14-2026 (ECF No. 31) while the other three plaintiffs moved to file a separate Amended Complaint. (*Id.*, ECF No. 43.) The Court directed them to clarify whether they wished to remain together in the same action. (ECF No. 45.) After receiving their responses, the Court found good cause to sever the matter into two actions, creating the instant proceeding, as well as *Rashid v. Lanigan*, Civ. A. No. 17-2805 (MAS).

Abdul-Aziz's Amended Complaint from the Prior Action became the operative complaint in this proceeding on April 25, 2017. (Civ. A. No. 17-2806, ECF No. 1.) Among other claims, the Amended Complaint realleges the RLUIPA claim based on the "Issue of the Halal Daily Menu," which does not include halal meats. (*Id.* at ¶¶ 12–13, 25.)

On June 12, 2017, Plaintiff and Defendants stipulated to the dismissal of the prayer oil claims. (*See* Civ. A. No. 14-2026, ECF No. 51.) The Court so-ordered that stipulation the following day. (*Id.*, ECF No. 52.)

On February 26, 2018, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's Amended Complaint. (*See* ECF Nos. 8–9.) The Court denied the motion to dismiss only with respect to the § 1983 and RLUIPA claims for prospective injunctive relief regarding "daily halal meals[.]" (*See* ECF No. 8 at 16; ECF No. 9 at 1.) The Court otherwise granted Defendants' motion to dismiss. (*See* ECF No. 8 at 16–17; ECF No. 9 at 1–2.)

On November 26, 2019, the Defendants filed their first motion for summary judgment, seeking dismissal of the remaining § 1983 and RLUIPA claims. (ECF No. 45.) On June 18, 2020, the Court granted summary judgment on the § 1983 claims but denied summary judgment on the RLUIPA claim.

On October 23, 2020, the Court appointed counsel for Plaintiff for the purpose of settlement. (ECF No. 58.) The parties engaged in prolonged settlement discussions but did not reach a resolution, and on November 21, 2024, the Magistrate Judge relieved counsel. (ECF No. 111.)

Defendants sought and received permission to file a second summary judgment motion. (ECF No. 112.) This motion followed. (ECF No. 117.) Plaintiff has filed his opposition brief, and

Defendants filed a reply brief. (ECF Nos. 119–120.) The matter is fully briefed and ready for a decision.

### b. Material Facts for Second Summary Judgment

Plaintiff is an inmate currently serving a life sentence within the New Jersey Department of Corrections ("NJDOC").[1] (ECF No. 124-1, Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 1 (citing Inmate Face Sheet and Progress Notes, Exhibit A, at 1).) He is a practicing Muslim, who, at the time he filed his Amended Complaint was receiving the religious vegetarian diet. (SUMF ¶ 2 (citing Plaintiff's Amended Complaint, Exhibit B, at ¶13; Sept. 3, 2019 Deposition of Plaintiff, Exhibit C, at 8:20–25, 21:5–17).) Plaintiff alleged in his Amended Complaint and testified in his deposition that his sincere belief is that he is not permitted to be a vegetarian and is commanded to eat meat. (SUMF ¶ 3 (citing Exhibit B, ¶¶ 12–14; Exhibit C, 17:23–25, 19:9–13, 20:9–17, 21:18–25, 25:10–11, 25:12–15, 26:13–15).) Plaintiff also testified that, as of September 2019, the NJDOC did not have policy providing inmates with halal meat, and Plaintiff was served the vegetarian diet. (Exhibit C, 19:9–18; 21:15–17.)

Plaintiff's religious beliefs are supported by a Declaration from Ibrahim Rivera, an Inmate Muslim Coordinator and teacher. (SUMF ¶ 4 (citing Declaration of Ibrahim Rivera, Exhibit D).) Mr. Rivera declares that the Qur'an "stat[es] an **obligation** of Muslim's eating meat." (SUMF ¶ 5 (citing Exhibit D, ¶ 3) (emphasis in original).) Mr. Rivera also avers that "the Islamic Diet includes MEAT and this MEAT must be HALAL," halal being defined by the Qur'an as meat "on which Allah's Name has . . . been mentioned while slaughtering." (SUMF ¶ 6 (citing Exhibit D, ¶ 4).) Finally, according to Mr. Rivera, "[t]he Qur'an, The Sunnah of Prophet Muhammad (PBUH), and

---

[1] During the course of this litigation, Plaintiff has been confined at New Jersey State Prison, East Jersey State Prison, and was recently moved to Northern State Prison.

Islamic Scholars (in Consensus) – REFUTE any such notion of a vegetarian diet for Muslims," and that "[v]egetarianism for Muslim's [sic] is an innovation – innovations are FORBIDDEN in Islam." (SUMF ¶ 7 (citing Exhibit D, ¶ 5).)

Defendants concede that "Count I of Plaintiff's initial complaint, filed with three other inmates in 2014, expressly referenced "daily halal meat meals." (SUMF ¶ 9 (citing ECF No. 1, ¶ 36).) They emphasize, however, that "Count I of Plaintiff's Amended Complaint, which Plaintiff filed on behalf of himself only, removed the specific language demanding "daily halal meat meals." (SUMF ¶ 10 (citing Exhibit B, ¶ 25).) Defendants further contend that "Plaintiff does not assert that his, or Mr. Rivera's, interpretations of Islam require halal meat at every meal, or even daily." (SUMF ¶ 11 (citing Exhibit B; Exhibit C; Exhibit D).)

According to Defendants, it was "only when asked what he wants out of this litigation does Plaintiff ask for three halal meat meals per day, seven days a week." (SUMF ¶ 16 (citing Exhibit C, 39:20–25) (emphasis in SUMF).) When asked "in specifics" how often Petitioner wished to consume halal meat, i.e., "how many times a day and that kind of thing[,]" Plaintiff analogized to Kosher meals, which are "three meals a day, seven days a week." However, Plaintiff clarified that he seeks a "Halal diet . . . three meals a day, seven days a week" but that the halal diet could include cereal for breakfast with "no meat involved." (Exhibit C, 40:1–8.) He further testified that "on days you have meat, if you're Muslim, it should be Halal meat, whether that's breakfast, lunch, and/or dinner." (*Id.* at 40:13–21.)

Defendants contend that on October 28, 2024, the NJDOC began offering Plaintiff, as well as the three plaintiffs in *Rashid v. Lanigan*, Civ. A. No. 17-2805, one halal-certified meat serving per week, free of charge, as a supplement to the vegetarian diet. (SUMF ¶ 17 (citing Certification of James Frank, dated March 24, 2025 ("Frank Cert."), Exhibit E, ¶ 4).) Defendants contend that

5

"Muslim inmates sharing Plaintiff's religious diet restrictions can request inclusion in this program." (*Id.* at ¶ 18 (citing Frank Cert. ¶ 5).)

In a Declaration accompanying his opposition brief, Plaintiff appears to deny that he is aware of the new food policy and avers that he has "never heard of" this "New Mysterious Halal Meat Diet." (ECF No. 119, Abdul-Aziz Decl. ¶ 1; *see also id.* at ¶¶ 11–12.) Plaintiff also simultaneously contends that the new offering still forces him to be a vegetarian 20 of 21 meals a week, or the vast majority of the time, which violates his religious beliefs that 1) he must consume halal meat and 2) avoid vegetarianism. (*Id.* at ¶¶ 2, 9–10, 14.) He further contends that the "Heart Healthy Diet" contains meat approximately 15 times a week and costs more than the halal-certified meals containing meat. (*Id.* at ¶¶ 3, 6.)

The parties also dispute whether halal-certified meat is available for purchase. Relying on the Frank Certification, Defendants contend that "Halal certified meat has been available for purchase at EJSP's commissary for years." (SUMF ¶ 19 (citing Frank Cert. ¶ 6).) Defendants also contend that the EJSP commissary has also sold fish for years, which, according to Plaintiff, is always halal compliant. (*Id.* at ¶ 20 (citing Exhibit C, 54:15–17; Frank Cert. ¶ 7).) Plaintiff supplies the EJSP commissary catalog and a commissary sales receipt showing that halal Summer Sausage is the only halal meat item at the commissary, but this item is not available for purchase.[2] (Abdul-Aziz Decl. ¶ 7 (citing Exhibits A, B).)

## II.    STANDARD OF REVIEW

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States*

---

[2] Plaintiff also provides evidence that he is allergic to fish and nuts. (Abdul-Aziz Decl. ¶ 8 (citing Exhibit E).)

6

*v. Care Alternatives*, 81 F.4th 361, 369 (3d Cir. 2023) (citing *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (explaining that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law).

It is well established that the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted). The moving party may also meet its burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (internal quotation marks omitted).

Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "If reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *See id.* at 250–51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "The judge's function at the summary judgment stage is solely to determine whether there is a genuine issue of material fact for trial." *Watson v. Rozum*, 834 F.3d 417, 421–22 (3d Cir. 2016) (citing *Carter v. McGrady*, 292 F.3d 152, 157 n.2 (3d Cir. 2002)).

### III. DISCUSSION

#### a. RLUIPA's Burden-Shifting Framework

Plaintiff's remaining claim for relief arises under RLUIPA. "By passing RLUIPA, Congress determined that prisoners . . . have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez v. Collier*, 595 U.S. 411, 433 (2022). The statute "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). Specifically, the relevant section of RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1. RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 356, (2015) (citing 42 U.S.C. § 2000cc–1).

8

"RLUIPA effectively codified strict scrutiny as the rule of decision for religious free exercise cases brought by prisoners against institutions that receive federal funding." *Cole v. Collier*, 117 F.4th 326, 329 (5th Cir. 2024).

RLUIPA creates a burden-shifting framework for assessing prisoner claims. To obtain injunctive or declaratory relief,[3] an inmate must show that he has a "sincerely held religious belief" and that the government "substantially burdened [his] exercise of religion." *Holt*, 574 U.S. at 361. "Congress made explicit in RLUIPA that, while the plaintiff 'shall bear the burden of persuasion on whether the [challenged policy] substantially burdens the plaintiff's exercise of religion,' the government bears the burden in all other respects." *Nunez v. Wolf*, 117 F.4th 137, 146 (3d Cir. 2024) (citing § 2000cc–2(b)); *see also Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007); *Holt*, 574 U.S. at 360–61. "[O]nce the plaintiff shows that his religious exercise has been substantially burdened, 'the burden flips and the government must demonstrate that the imposition of the burden on that person is the least restrictive means of furthering a compelling governmental interest.'" *Nunez*, 117 F.4th at 146 (quoting *Ramirez*, 595 U.S. at 425) (cleaned up). "Under RLUIPA, the government cannot discharge this burden by pointing to 'broadly formulated interests.'" *Ramirez*, 595 U.S. at 427 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)). Instead, it must "'demonstrate that the compelling interest test is satisfied through application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id.* (quoting *Holt*, 574 U.S. at 363).

---

[3] RLUIPA did not abrogate sovereign immunity with respect to money damages; money damages are unrecoverable where a plaintiff sues a state entity or a state official in their official capacity under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Similarly, RLUIPA does not impose a condition of individual liability that renders individual defendants vulnerable to claims for money damages in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012). "[I]n other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief." *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017).

Defendants' motion for summary judgment focuses solely on whether the challenged policy substantially burdens Plaintiff's religious beliefs and does not address whether Defendants satisfy the compelling interest test. (*See* ECF No. 117-1 at 10 ("As State Defendants rely solely on the substantial burden test . . . this brief will not address the strict scrutiny prong of the RLUIPA test.")).

### b. On this Record, Plaintiff has Presented a Prima Facie Case that NJDOC's Current Food Policy Substantially Burdens his Religious Exercise

In their second summary judgment motion, Defendants argue that the NJDOC's current food policy does not substantially burden Plaintiff's religious exercise. When Plaintiff instituted this litigation, the NJDOC's meal policy did not include any halal meat. As the Court stated in denying Defendants' first summary judgment motion in 2020, Plaintiff had "two meal options – both of which violate[d] his religious beliefs, and neither of which provide[d] him with halal meat." (ECF No. 53 at 25.) Moreover, the Court noted that Plaintiff did not have "the option to buy halal meat at the commissary." (*Id.*) Defendants now seek summary judgment based on two changes: 1) since October 2024, the NJDOC is voluntarily providing Plaintiff one meal per week that includes halal-certified meat; and 2) Plaintiff can also supplement his diet with halal-certified meat by buying it at the prison commissary. For the reasons explained below, however, Defendants are not entitled to summary judgment on this record.

#### 1. The Parties Dispute the "Religious Exercise" at Issue or How Often Plaintiff must Consume Halal Meat

The parties agree that Plaintiff's religious beliefs require him to consume halal meat and avoid vegetarianism. Indeed, "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,'" *Holt*, 574 U.S. at 360–61 (quoting § 2000cc–5(7)(A)). And "the 'exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship

10

service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990), superseded on other grounds by statute. Eating halal meat and avoiding vegetarianism—fall within this "capacious[ ]" definition, *Holt*, 574 U.S. at 358, and Defendants do not argue otherwise.[4]

The parties dispute how often Plaintiff must eat meat to comply with his religious beliefs. Because the substantial burden inquiry is practice specific, courts should "first identify the 'religious exercise' at issue." *See Ackerman*, 16 F.4th at 184–85 (explaining that the "religious exercise" at issue was "eating meat and dairy as part of meals on various holidays.") And in doing so, Courts "must avoid 'refram[ing] the nature of' the desired exercise." *Id.* (quoting *Cavin v. Michigan Department of Corrections*, 927 F.3d 455, 459 (6th Cir. 2019)).

Defendants argue that the "religious exercise" at issue simply requires Plaintiff to eat halal meat and avoid being a vegetarian. That is, they contend that Plaintiff's religious beliefs do not require him to eat halal meat on a daily basis or as a regular part of his diet. They concede that Plaintiff's 2014 complaint specifically referred to the denial of "daily" halal meat, but emphasize that his Amended Complaint does not contain that specific request. They also note that Mr. Rivera's Certification does not specify how often Muslims must eat meat. Although Plaintiff deposition testimony suggests that he must consume halal meat regularly, if not at every meal, Defendants characterize this testimony as what Plaintiff "wants" or desires and not what is required by his religious beliefs. Based on this view of the evidence, Defendants argue that the NJDOC new policy,

---

[4] RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity. *Cutter*, 544 U.S. at 725 n. 13. RLUIPA's sincerity prong, however, "is not a difficult hurdle for prisoners." *Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021). The main caveat is that a "prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360–61 (citing *Hobby Lobby*, 573 U.S. at 717, n. 28).

11

which provides Plaintiff with one halal-certified meat serving per week, accommodates Plaintiff's religious exercise.

From the outset, Plaintiff is pro se, and his Amended Complaint must be liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). The Court is unconvinced that the omission of the word "daily" from his Amended Complaint led Defendants to believe that Plaintiff's claim for relief had fundamentally changed when that claim survived the first motion to dismiss. Moreover, Plaintiff's deposition testimony about his religious beliefs and what he "wants" from this litigation appear to be one and the same. Indeed, both Plaintiff's deposition testimony and his Declaration suggest that his religious beliefs do not simply require him to eschew vegetarianism in a technical sense and instead require him to consume meat as a regular part of his diet.[5]

Plaintiff's religious belief that he as a Muslim must regularly eat meat finds support in at least one decision outside this circuit. In *Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019), the plaintiff also received a halal vegetarian diet but "adhere[d] to a sect of Islam that requires its members to follow a diet that regularly includes halal meat." Like Plaintiff, Jones relied on the command in the Qur'an to eat meat and submitted a supporting affidavit from an Imam:

> Jones and the other members of his sect within Islam believe that the holy Qur'an plainly commands him to "eat what is on earth, Lawful and good"—including meat. Some Muslim scholars support Jones's interpretation, and the Imam employed by the DOC agreed that Jones's view is "a valid opinion" shared by some other Muslims, though not the Imam himself. Jones does not take the position that he needs to eat meat with every meal, but he believes it must be a regular part of his diet.

---

[5] Defendants argue that Plaintiff's Declaration is self-serving, but the Court disagrees. Plaintiff's Declaration responds to their argument about the scope of his religious beliefs, and is largely consistent with his deposition testimony. In addition, Plaintiff was not deposed about the new meal policy, which took effect in October 2024.

*Id.* at 1148. After a brief trial, the district court found in favor of Jones, and the United States Court of Appeals for the Seventh Circuit affirmed, finding that a vegetarian diet substantially burdened Jones's religious exercise where he could not afford to subsidize it himself. *Id.* at 1151–52. (noting, however, that Jones's "belief that eating meat is a requirement for devout Muslims appears to be a minority view within Islam").

Ultimately, at summary judgment, this Court must construe the evidence in the light most favorable to Plaintiff, the non-moving party, and may not resolve factual issues in favor of Defendants. In *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010), for instance, the Court found the record at summary judgment unclear as to the specific diet sought by plaintiff, but the Court gave him "the benefit of all inferences in his favor at this summary-judgment stage," and "proceeded on the understanding that he seeks a halal-certified diet that includes halal-certified meats." At best, the frequency with which Plaintiff believes he must eat halal meat is disputed, with Defendants claiming that Plaintiff complies with his Muslim faith if he consumes halal meat on occasion and avoids strict vegetarianism, and, albeit lacking specificity, Plaintiff claiming that he must consume halal meat as a regular part of his diet to comply with his Muslim faith. For purposes of this motion, the Court views the disputed facts in Plaintiff's favor, and finds that his religious beliefs require him to eat meat at least on a regular basis.

The issue of how often Plaintiff believes he must eat meat also implicates his credibility. In denying Defendants' first summary judgment motion, the Court noted that it was not making any findings of fact regarding the sincerity of Plaintiff's beliefs, including how often he believed he must eat halal meat:

> The Court does not make any findings of fact with regard to the sincerity of Plaintiff's belief that he must consume halal meat. Nor does the Court determine whether Plaintiff sincerely believes that he must consume halal meat at every meal, on daily basis, or as a part

13

of his general diet. These issues require an assessment of Plaintiff's credibility and are not properly resolved on summary judgment.

(ECF No. 53 at 23 n.12.) The Court agrees that this issue implicates Plaintiff's credibility and can only be resolved at trial.[6]

### 2. Whether the Current Food Policy Substantially Burden Plaintiff's Religious Exercise

To survive summary judgment, Plaintiff must also present a prima facie case that NJDOC's current food policy, which provides him with one serving of halal meat per week, substantially burdens his exercise of religion. 42 U.S.C. § 2000cc–1(a); *Holt*, 574 U.S. at 361. RLUIPA does not define "substantial burden." Instead, Congress expected courts to interpret and apply the substantial burden standard in a manner consistent with "Supreme Court jurisprudence." 146 Cong. Rec. 16698 (2000) (Joint statement of Senators Orrin Hatch and Edward Kennedy). The Supreme Court has defined "substantial burden" as something that "seriously violates [one's] religious beliefs," regardless of whether alternative means of religious exercise are available.[7] *Holt*, 574 U.S. at 361 (quoting *Hobby Lobby*, 573 U.S. at 720)); *see also Klem*, 497 F.3d at 280 (substantial burden exists where an inmate "is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government

---

[6] Defendants are free to challenge the sincerity and scope of Plaintiff's religious beliefs at trial.

[7] As noted by Judge Easterbrook in *Schlemm v. Wall*, 784 F.3d 362, 364–65 (7th Cir. 2015),

> The Supreme Court's formulation [of substantial burden in *Holt* and *Hobby Lobby*] leaves a lot of uncertainty. How is a court to tell whether a given restriction "seriously" violates or contradicts religious beliefs? What, indeed, does "seriously" mean?—more than "modestly" and less than "overwhelmingly," but there's a lot of space in that range.

*Id.*

puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs").

In *Holt*, the Supreme Court found that the plaintiff, a Muslim prisoner who believed that his faith required him to grow facial hair, "easily satisfied" his burden of showing that the ADC's grooming policy, which prohibited facial hair without a medical exception, "substantially burdened that exercise of religion." 574 U.S. at 358–59, 361. Once the Supreme Court found that the prisoner's desire to grow facial hair constituted religious exercise under RLUIPA, the question of whether the grooming policy qualified as a substantial burden did not require rigorous analysis, because the policy prohibited the prisoner from exercising that religious belief at all.

Two recent decisions from the United States Court of Appeals for the Third Circuit also analyzed policies that prohibited altogether the religious exercise in question. In *Nunez v. Wolf*, 117 F.4th at 149, the Third Circuit found that a Muslim plaintiff "easily satisfie[d]" the substantial burden requirement "with regard to his requests for conjugal visits and congregate prayer" because "the DOC's denials have forced him to "substantially modify his behavior and to violate his beliefs." (citing *Washington*, 497 F.3d at 280). And as the Third Circuit opined in *Davis v. Wigen*, 82 F.4th 204, 212 (3d Cir. 2023),[8] "[t]here can hardly be a more substantial burden on a religious practice or exercise than its outright prohibition." *Id.* (citing *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) ("The greater restriction (barring access to the practice) includes the lesser one

---

[8] In *Davis*, the Third Circuit addressed "whether an individual suffers a substantial burden on religious exercise when the particular religious exercise is not mandatory." 82 F.4th at 212 (finding that denying prisoner's marriage request, which was an expression of his Christian faith, was a substantial burden to his religious beliefs under RLUIPA's sister statute, the Religious Freedom Restoration Act ("RFRA")). The Court held that "in light of the statutory text, our use of the phrase 'violate his beliefs' in prong two of *Klem* does not exclude non-mandatory religious conduct or beliefs." *Id.* Therefore, a RFRA or RLUIPA claim does not need to involve mandatory religious conduct or beliefs, but the government's conduct or policy still must compel an individual to violate his or her beliefs.

(substantially burdening the practice)."). And "[w]hile not every government-imposed hurdle to the practice of sincere faith-based conduct will be a substantial burden, the more proximate the government action is to an outright bar, the more likely it is a substantial burden." *Id.*

As alluded to in *Davis*, a substantial burden need not be an outright bar or prohibition on the specific religious exercise. In *Klem*, for instance, the plaintiff was "a practitioner of the Children of the Sun Church for over two decades" and one of faith's rituals "require[d] a practitioner to read four different Afro-centric books per day" in order to meet the "Church's proselytization requirement." 497 F.3d at 275. The DOC policy did not prohibit books in a prisoner's cell altogether but limited the number of books to 10 at a time, along with other property limitations, for security, hygiene, and safety reasons. *Id.* The DOC did not challenge the sincerity of the plaintiff's religious beliefs; nevertheless, it argued that the 10-book limitation was not a substantial burden. *Id.* at 282–83. Although the district court agreed with the DOC and granted summary judgment, the circuit court found insufficient evidence that the plaintiff could abide by his religious beliefs due to the 10-book limit and reversed, holding that "the Pennsylvania DOC's ten-book limitation substantially burdens the practice of Washington's religion." *Id.*

Here, Defendants argue that the burden on Plaintiff is "minimal" and not "substantial" in light of their current food policy. (ECF No. 117-1 at 12.) To the extent Plaintiff now receives one halal-certified meal a week that includes meat,[9] he faced a more extreme burden under NJDOC's prior meal policy, which did not offer halal-certified meat at all. Defendants also contend that Plaintiff can purchase additional halal-certified meat to supplement his diet, but there are disputed

---

[9] In his Declaration, Plaintiff vaguely disputes the existence of the new food policy, but he also claims that the new policy forces him to be a vegetarian the majority of the time. At trial, Plaintiff is free to clarify whether he is receiving one halal-certified meal containing meat a week, refusing that offering, or if the new food policy has not been offered to him.

16

issues of material fact as to whether it is available for purchase in the commissary on a regular basis or at all, and the Court cannot resolve that dispute on the current record.[10] Thus, the Court assumes for purposes of this motion that Plaintiff is unable to purchase halal-certified meat at the commissary to supplement his diet. And for the reasons already explained above, the Court must also assume that Plaintiff sincerely believes his Muslim faith requires him to eat halal-certified meat daily or at least on a regular basis. The current food policy provides him with one serving of halal-certified meat per week, leaving him to consume a vegetarian diet the remaining 6 days or 20 meals per week. The current food policy is not a total prohibition and marginally accommodates Plaintiff's religious beliefs. On this record, however, it still amounts to a substantial burden on Plaintiff's religious exercise, and summary judgment is denied.[11]

## IV. **CONCLUSION**

For the reasons explained in this Opinion, the motion for summary judgment is DENIED. In light of the age of this case, this matter is referred to the Magistrate Judge to appoint counsel for Plaintiff. Following the appointment of counsel, the Court will hold a settlement conference with the parties. Since the only remedies available to Plaintiff under RLUIPA are equitable in

---

[10] Moreover, several circuit courts have held that the government substantially burdens religious exercise when it requires Jewish or Muslim inmates to pay for kosher or halal meals while other prisoners receive food at no cost. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 793–94 (5th Cir. 2012); *Jones*, 915 F.3d at 1150–51; *Abdulhaseeb*, 600 F.3d at 1317–18. *But see Ali v. Adamson*, 132 F.4th 924, 935 (6th Cir. 2025) (rejecting prisoner's claim that "his prison salary does not cover the halal meats in the commissary" where "the undisputed record says that he can afford them" and "spent roughly ninety dollars each month on various food items in the commissary"). The Court does not reach this issue because there is a factual dispute over whether halal-certified meat is available in the commissary, and Defendants do not argue that Plaintiff can afford to supplement his diet.

[11] Defendants also argue that Plaintiff's RLUIPA claim is moot, but that argument is based on their claim that his religious beliefs require him to avoid vegetarianism and do not mandate halal meat on a daily or regular basis.

nature, the Court will schedule a bench trial on the RLUIPA claim if settlement negotiations fail. An appropriate Order follows.

							_____
							**ROBERT KIRSCH**
							**UNITED STATES DISTRICT JUDGE**